UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOAO CONTROL & MONITORING
SYSTEMS, LLC,

        Plaintiff,

                                   Case No. 13-cv-13957

v.

                                   HON. MARK A. GOLDSMITH

CHRYSLER GROUP LLC,

        Defendant.

_____/

**OPINION AND ORDER
(1) GRANTING IN PART AND DENYING IN PART DEFENDANT FCA US
LLC'S MOTION FOR SUMMARY JUDGMENT ON INVALIDITY AND NON-
INFRINGEMENT (Dkt. 59) AND (2) DENYING AS MOOT PLAINTIFF JOAO
CONTROL & MONITORING SYSTEMS, LLC'S MOTION FOR SUMMARY
JUDGMENT OF INFRINGEMENT OF U.S. PATENT NO. 7,397,363 BY
UCONNECT ACCESS (Dkt. 57)**

This is a patent infringement case in which Plaintiff Joao Control & Monitoring Systems,

LLC ("JCMS") alleges that Defendant FCA US LLC (formerly Chrysler Group LLC) ("FCA")

has infringed several of its patents by manufacturing, selling, and using its UConnect Access

product.  Before the Court are FCA's Motion for Summary Judgment on Invalidity and Non-

Infringement (Dkt. 59) and JCMS's Motion for Summary Judgment of Infringement of U.S.

Patent No. 7,397,363 by UConnect Access (Dkt. 57).

For the reasons stated below, the Court grants in part and denies in part FCA's Motion

for Summary Judgment on Invalidity and Non-Infringement (Dkt. 59) and denies as moot

JCMS's Motion for Summary Judgment of Infringement of U.S. Patent No. 7,397,363 by

UConnect Access (Dkt. 57).  Specifically, the Court holds that all of the claims being asserted in

JCMS's patents to be invalid, as either obvious or anticipated based on prior art.  Because the

1

Court finds that all asserted claims are invalid as being obvious and/or anticipated based on prior art, FCA's other invalidity and non-infringement arguments, as well as JCMS's infringement arguments, are moot. Summary judgment will be entered in favor of FCA, dismissing JCMS's complaint with prejudice.

## I. BACKGROUND

### A. Procedural Background

This patent infringement case was transferred to this Court from the United States District Court for the Southern District of New York on September 16, 2013. After substantial discovery, the Court held a claim construction hearing on March 24, 2015 and issued a formal claim construction opinion on August 26, 2015. 8/26/2015 Op. & Order (Dkt. 53). After the filing of the pending cross motions for summary judgment, the Court heard oral argument on April 15, 2016 and allowed supplemental briefs, which were reviewed along with the earlier briefing.

### B. Overview of the Asserted Patents

JCMS has alleged that FCA has infringed four patents by making, selling, using a system named UConnect Access: U.S. Patent No. 5,917,405 ('405 Patent), entitled "Control Apparatus and Methods for Vehicles"; U.S. Patent 6,549,130 ('130 Patent), entitled "Control Apparatus and Method for Vehicles and/or Premises"; U.S. Patent No. 6,542,076 ('076 Patent), entitled "Control, Monitoring and/or Security Apparatus and Method"; and U.S. Patent No. 7,397,363 ('363 Patent), entitled "Control and/or Monitoring Apparatus and Method."

The four patents are all part of the same family of patents and are thus related. The parties agree that that the written description sections of the asserted patents are largely the same.

2

The asserted patents relate <u>inter alia</u> to a security system to prevent a thief from stealing a vehicle or, alternatively, to allow the owner of a vehicle to recover a stolen vehicle.  In one example embodiment of the invention, the asserted patents teach a system that allows a vehicle owner, after a thief steals his car, to safely turn off the vehicle or lock out the thief from the vehicle after his getaway.  When his car is stolen, the vehicle's owner would use his cellular telephone or personal computer to access an online website (or a central security office) where he could control various vehicle systems.  The website or central security office would then communicate with the vehicle's onboard computer, thereby allowing the vehicle's owner to control systems of the vehicle.

More specifically, the patented system allows the vehicle's owner to turn off or activate various vehicle systems to thwart a user from stealing the vehicle in various ways, such as turning off the fuel supply system, the exhaust system, or the ignition system, locking the vehicle hood, turning on an interior or exterior siren, alarm, or horn, activating an intercom system for providing communications between vehicle owner and the vehicle occupants, and/or activating a video and/or audio recording device within the vehicle.  The patented system would only allow the vehicle owner to turn off these vehicle systems when it is safe to do so, such as when the thief turns the engine or the vehicle is stopped.  The asserted patents also teach that the patented system can have a vehicle position and locating device which can be utilized to allow the vehicle's owner to determine the position and/or location of the vehicle after it is stolen.

Figure 11B of the '363 Patent illustrates the patented system, which has been reproduced below.  Reference number 150 shows a home and/or personal computer that communicates with an intermediate computer server (952), a central security office (950), or directly with a receiver (3) on the vehicle.  By using the personal computer (150), the user can send instructions to the

server computer (952), which will process the user directions, and then communicate the instructions to the CPU (4) (computer processing unit) at the vehicle.  The CPU (4) in the vehicle will then send commands to the relevant system interface to control a system in the vehicle such as the ignition system or the vehicle fuel pump.   Thus, the user can remotely control a system in the vehicle from a home computer by communicating with an intermediate server, which then sends instructions to the vehicle.



FIG. 11B

## C.  REEXAMINATION AND <u>INTER PARTES</u> REVIEW PROCEEDINGS

In June 2014, Volkswagen Group of America, Inc. filed <u>ex parte</u> reexamination proceedings at the United States Patent and Trademark Office ("USPTO") challenging the validity of one claim from each of the asserted patents in this case.  12/2/2015 Koperda Report at D-5 ¶ 0178.  The USPTO only upheld the validity of Claim 21 of the '363 Patent.  <u>Ex Parte</u> Reexamination Certificate U.S. Patent No. 7,397,363 (Dkt. 75-4).  The USPTO Patent Examiner

found the other claims challenged in the reexamination proceedings (Claim 1 of the '405, Claim 48 of the '130 Patent, and Claim 3 of the '076 Patent) to be invalid.  JCMS has appealed the decisions of the USPTO Patent Examiner.  Volkswagen did not rely upon the primary prior art reference at issue in the present motion for summary judgment in the ex parte reexamination proceedings, specifically the published European patent application 92400712.3 to inventor Didier Frossard, entitled "System for controlled shutdown and for location of a movable or mobile equipment" (Dkt. 59-33).

In response to JCMS asserting its patents, accused infringers filed numerous inter partes review proceedings at the USPTO challenging the validity of various claims in the '405, '130, '076, and '363 Patents.  Of particular note to this case, in the automotive field, Nissan North America, Inc. filed petitions to institute inter partes review proceedings against each of the asserted '405,[1] '130,[2] '076,[3] and '363[4] Patents.  In January 2016, the USPTO decided to institute formal inter partes review proceedings against each of the '405, '130, 076, and '363 Patents because Nissan had demonstrated that there was "a reasonable likelihood it would prevail in establishing the unpatentability" of the challenged claims in the patents.  35 U.S.C. § 314(a). (Dkts. 85-4, 5, 6, and 7).  In making its preliminary decision, the USPTO relied heavily on Frossard.  A trial has not yet taken place in the Nissan inter partes review proceedings.

### D.  The Accused Product: UConnect Access

---

[1]  IPR2015-01585

[2]  IPR2015-01509

[3]  IPR2015-01508

[4]  IPR2015-01645

Plaintiff alleges that certain features of FCA's UConnect Access product infringe the asserted patents. These features are "Remote Start, Remote Lock/Unlock, Remote Horn and Lights, Theft Alarm Notification, Vehicle Health Report, 911 Call, Roadside Assistance, and Battery Electric Vehicle Features." UConnect Access is a subscription-based service that allows a user to connect remotely with his or her vehicle. A subscriber may use his or her cellular telephone or personal computer to communicate with the vehicle via third-party servers and networks under contract with FCA. These remote features allow a user to <u>inter alia</u> use his or her cellular telephone or personal computer to remotely start and stop the vehicle engine, lock or unlock doors, or activate the horn and lights.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is as available in patent cases as in other areas of litigation." <u>Cont'l Can Co. USA, Inc. v. Monsanto Co.</u>, 948 F.2d 1264, 1265 (Fed. Cir. 1991).

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is "no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." <u>Sagan v. United States</u>, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." <u>Gutierrez v. Lynch</u>, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. Sagan, 342 F.3d at 497 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Horton v. Potter, 369 F.3d 906, 909 (6th Cir. 2004) (citing Celotex, 477 U.S. at 325). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial." Horton, 369 F.3d at 909 (citing Matsushita, 475 U.S. at 587). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury. . . ." Anderson, 477 U.S. at 251-252.

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment — the disputed factual issue must be material. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find . . . that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'" Id. at 252 (alteration in original) (citation omitted). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

### III. ANALYSIS

In its motion for summary judgment, FCA argues that the asserted claims in the patents-in-suit are invalid as being anticipated and obvious in light of specific prior art. The asserted claims are:

- '405 Patent: Claims 15, 17, and 20
- '076 Patent: Claims 13, 17, 18, 28, 65, and 68
- '130 Patent: Claims 64, 85, 92, and 144
- '363 Patent: Claims 21, 22, 24, 25, 33, and 36

Because a patent is presumed valid, invalidity must be proven by clear and convincing evidence by the party asserting an invalidity defense. Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91, 95 (2011); 35 U.S.C. § 282.

"A claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference." Whitserve, LLC v. Computer Packages, Inc., 694 F.3d 10, 21 (Fed. Cir. 2012) (citations omitted); 35 U.S.C. § 102. Anticipation is a question of fact. Zenith Elec. Corp. v. PDI Comm. Sys., Inc., 522 F.3d 1348, 1356 (Fed. Cir. 2008). "Anticipation, though a question of fact, may be resolved on summary judgment if no genuine issue of material fact exists." Osram Sylvania, Inc. v. Am. Induction Techs., Inc., 701 F.3d 698, 704 (Fed. Cir. 2012). "Summary judgment is proper if no reasonable jury could find that the patent is not anticipated." Zenith, 522 F.3d at 1357.

A patent claim is invalid as "obvious" under 35 U.S.C. § 103(a) where "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time invention was made to a person having ordinary skill in the art to which said subject matter pertains." The obviousness determination must take place through the eyes of a person of ordinary skill in the art, i.e., a hypothetical person presumed to be aware of all the prior art in the field of invention and all analogous fields. In re Gorman, 933 F.2d 982, 986 (Fed. Cir. 1991).

8

Obviousness is a question of law based on underlying facts.   KSR Int'l Co. v. Teleflex, Inc., 550 U.S. 398, 427 (2007).  The underlying facts or factors a court considers are as follows: (i) the scope and content of the prior art, (ii) the difference between the prior art and the claimed invention, (iii) the level of ordinary skill in the field of invention, and (iv) any relevant secondary consideration that evidence that the claimed invention is not obvious.  Graham v. John Deere Co., 383 U.S. 1, 17 (1966).  "Where . . . the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate."  KSR, 550 U.S. at 427.

The Court considers each of the Graham factors below and also addresses FCA's anticipation arguments.

## A.  First Graham Factor: The Person of Ordinary Skill in the Art

The first Graham factor that a Court must consider is the level of skill in the art.  Because the facts must be viewed in the light most favorable to the non-moving party in deciding a summary judgment motion, the Court will accept the testimony of JCMS's expert witness as to the level of skill in the art.  Specifically, Mr. Koperda states as follows:

> [A] hypothetical person[] of ordinary skill in the art would be someone with at least a Bachelor's Degree in a computer science or related major, such as software engineering, or electrical engineering with at least 3-4 years of practical experience in the field of control & data network communications and/or messaging systems.

12/2/2015 Koperda Report at 5 (Dkt. 78-1).

## B.  Second Graham Factor: Scope and Content of the Prior Art

The second Graham factor that a Court must consider is the scope and content of the prior art.  The Court finds that there is no genuine issue of material fact regarding the scope and content of the asserted prior art references.

FCA argues that the patents-in-suit are invalid based on two primary prior art references: (i) published European patent application 92400712.3 to inventor Didier Frossard, entitled "System for Controlled Shutdown and for Location of a movable or mobile equipment" ("Frossard") (Dkt. 59-33), and (ii) German patent application P4423328, entitled "Technical Apparatus for Presentation of Location Data of Mobile Bodies on Digitized Maps and Elicitation of Reactions in the Mobile Body Without the Need for a Cost Intensive Center" ("Schmidt) (Dkt. 59-32).  Frossard was filed with the European Patent Office on March 17, 1992 and published on September 23, 1992.  Schmidt was filed with the German patent office on June 22, 1994 and published on January 4, 1996.  For brevity, and because there is a dispute as to whether Schmidt is prior art to all of the asserted claims, the Court will analyze the patentability of the asserted claims over Frossard either alone or in combination with other secondary prior art patents.  It is undisputed that Frossard is prior art to all the asserted claims.

Frossard teaches a system to remotely shut down and locate a vehicle if it is stolen. Frossard teaches a three-device communication system: (A) a person using a computer or telephone communicates with (B) an intermediate computer server, which then sends a signal to (C) the remote vehicle to have the vehicle perform a function, such as to shut down the vehicle if it is stolen.  In other words, Frossard discloses a three-device communication system: A to B to C.

Figure 1 of Frossard, reproduced below, illustrates the prior art system.



In the prior art system of Frossard, as shown above, using a networked computer or telephone, a person transmits an access code to a remote server (1).  After the server verifies the access code, the person can then enter an intervention order for the vehicle (3) to perform.  If the intervention order or code is recognized, the server will then send a signal to the vehicle.  A receiver (4) on the vehicle receives the message and then a "controlled inhibition circuit" (5) on the vehicle performs the vehicle shutdown or other operation.

For example, Frossard describes the operation of its system as follows:

> The general operation of the system constituting the object of the invention as described in Figure 1 to 3a, 3b is as follows:
>
>          *        *        *
>
> In the case of theft of movable or mobile equipment 3, the owner or the authorized person calls server center 1 and communicates the access code thereto.  After verification of the validity of this access code by server 1, as mentioned above in the description, the user is then invited to communicate the shutdown order.  This

11

order may be either the simple response to a question of the server or, on the other hand, as already mentioned above in the description, a digital message of several digits. Such a solution then permits very high transaction security, because it is possible, as already mentioned in the above, to personalize this message according to the aforesaid equipment.

The shutdown order is then validated by server center 1 and next transmitted to the box of equipment 3 via message M described above. The later, via the RDS receiver described in connection with Fig. 2, decodes this message and addresses the corresponding commands to equipment 3 itself, causing immediate or deferred shutdown depending on the application under consideration.

Frossard at 8-9 (Dkt. 59-33).

The record also contains other secondary prior art patents, which disclose secondary features or claim limitations contained in various independent and dependent claims. Where relevant, the Court will discuss and explain those additional prior art in the next section analyzing the differences between the prior art and the asserted claims.

### C. Third <u>Graham</u> Factor: Differences Between the Prior Art and the Claimed Invention

The third <u>Graham</u> factor that a Court must consider is the difference between the prior art and the claimed invention. The Court finds that there is no genuine issue of material fact regarding the differences between the prior art and the claimed invention.

The invention described in Frossard is nearly identical to the invention described in the patents-in-suit. Below is a side-by-side comparison of Figure 1 of Frossard to a rearranged version of Figure 5B of the '405 Patent, which illustrates the corresponding components. This comparison illustrates that both systems have essentially the same overall structure of an A to B to C communication system: a user using a remote computer sends a signal to an intermediate control device, such as a computer server, which in turn sends a signal to the vehicle to shut

down the vehicle if it is stolen.    Figure 1 of Frossard below shows that using a networked computer or telephone, a person transmits an access code to the remote server (1).   After the server verifies the access code, the person can then enter an intervention order for the vehicle (3) to perform.   If the intervention order or code is recognized, the server computer will then send a signal to the vehicle.   A receiver (4) on the vehicle receives the message and then a "controlled inhibition circuit" (5) on the vehicle performs the vehicle shutdown or other operation.



FIG. 1 of Frossard                    Modified FIG. 5B of '405 Patent

The rearranged version of Figure 5B of the '405 Patent illustrates the inventions claimed in the asserted patents.  Like Frossard, the asserted patents teach a system that allows an owner, after theft of his vehicle, to turn off the vehicle by controlling vehicle systems via an online website or central security office.  For example, the patented system allows the vehicle's owner to turn off or activate various vehicle systems to thwart theft of the vehicle, such as by turning off the fuel supply system, turning off the ignition system, or activing a siren or alarm system.  In the typical embodiment of the patented invention, when the vehicle is stolen, the vehicle's owner through his personal computer (150) accesses and sends commands to a remote server computer (510) via a website (520) or security office in order to control vehicle functions.  The website or security office system (510) then sends commands via a cellular network to the vehicle's computer (4), which in turn sends a signal to the vehicle systems, such as the ignition system (7) or fuel system (9), to disable the vehicle.  All of the asserted claims have the common design of being a three control device communication system (i.e., A to B to C), although almost all of the claims have additional claim limitations.

Patentability of the individual claims must be considered as a whole. 35 U.S.C. § 103; Jones v. Hardy, 727 F.2d 1524, 1529 (Fed. Cir. 1984) ("The test is whether the claimed invention, considered as a whole, would have been obvious or nonobvious.").  Because of the numerous asserted claims containing various combinations of features, the Court will now analyze the various features claimed in the asserted claims and relied upon by JCMS in arguments regarding patentability.

### 1.  Frossard Teaches a Three Control Device System

As mentioned above, all of the asserted claims have the common design of being a three control device communication system, although almost all of the claims contain additional claim

14

limitations.  Claim 20 of the '405 Patent is the only asserted claim that is directed to the three-device control system without additional material claim limitations.

As discussed above, there is no genuine issue of material fact that Frossard discloses a three control device system for remotely controlling a vehicle function such as the ignition system or the fuel supply system.   The asserted patents and Frossard have essentially the same overall structure of an A to B to C communication system: a remote user using, for example, his home computer sends a signal to an intermediate server computer which in turn sends a signal to the control device at the vehicle to shut down the vehicle if it is stolen.

JCMS's primary argument why Frossard does not anticipate or render the asserted claims obvious is that while Frossard discloses a three-device communication system, Frossard does not disclose a three "control" device communication system. At oral argument, JCMS clarified this argument with respect to Frossard.  JCMS argues that there is no control device at the vehicle. For example, at oral argument JCMS stated:

> [I]f we call them in order first, second, third control device[s], in this case, in the case of Frossard it's the third control device that's missing.  Chrysler has missed the point on that I think and argued instead that there's an intermediate server.  We don't dispute that that server is an intermediate server.  The problem with Frossard is whether there's a control device at the vehicle and there simply isn't any reason for it to be at the vehicle.

4/21/2016 Hr'g Tr. at 39-40 (Dkt. 118).  According to JCMS, the receiver-decoder circuit 4 as shown in Figure 1 of Frossard, is not a "control device" because it was simply responding or passing along a signal like a "simple relay."  See, e.g., 4/21/2016 Hr'g Tr. at 39.

Claim 20 of the '405 Patent and Claim 16 from which Claim 20 depends, which are reproduced below, are representative of all the claims which require three "control devices":

> 16. A  method  for  control  for  a  vehicle,  which  comprises:

transmitting a first signal from a first control device to a second control device, wherein the first control device is located at a location remote from the vehicle and remote from the second control device;

transmitting a second signal from the second control device to a third control device, wherein the third control device is located at the vehicle, and further wherein the second control device is located at a location remote from the vehicle;

generating a third signal at the third control device in response to said second signal,

one of activating, deactivating, enabling, and disabling, one of a vehicle component, a vehicle device, a vehicle system, and a vehicle subsystem, in response to said third signal.

20. The method of claim 16, wherein the first control device is one of a stationary device, a hand-held device, a mobile device, a telephone, a digital telephone, a cordless telephone, a cellular telephone, a wireless telephone, a computer, a personal computer, a personal digital assistant, a television, an interactive television, a digital television, a personal communications device, a personal communications services device, a display telephone, a video telephone, a watch, a beeper, and a pager.

'405 pat. cols. 76-77 and  cert. of correction.

In its Opinion and Order Construing Disputed Claim Terms, the Court construed "control device" as "a device that directs the activity of another device" based on a broad use of the term in the patents-in-suit.  8/26/2015 Op. & Order at pgs. 7-8 (Dkt. 53).  For example, the asserted patents make clear the personal computer or telephone of a user is a control device, the intermediate server computer is a control device, and the processing unit within the vehicle is control device.

The Court finds that there is no genuine issue of material fact that Frossard discloses a third control device or processing device at the vehicle.  As illustrated in Figure 2 of Frossard, which is reproduced below, Frossard teaches using a "receiver/decoder circuit 4."   This

receiver/decoder circuit is clearly a control device because it "directs the activity of another device." 8/26/2015 Op. & Order at 7-8. As shown below in Figure 2 of Frossard, the receiver/decoder circuit 4 receives and decodes a RDS type signal at a "RDS Receiver" and evaluates it at a "paging message processing module 421." Frossard at 7-12 (Dkt. 59-33.) As the names implies, the "paging messaging processing module 421" processes the signal and "on the basis of a criterion for evaluation" sends a shutdown, startup, or standby command to the "controlled inhibition circuit means 5." Id. at 5, 8. The "controlled inhibition circuit means 5" shuts down the vehicle by breaking the electrical circuit of the starter, id. at 11, or by inhibiting the ignition or fuel injection circuits, id. at 14. If a vehicle shutdown order is received, the receiver/encoder circuit also issues the command to the "conditional transmitter 61" to send the vehicle location to the owner. Id. at 11. Thus, the receiver/decoder circuit of Frossard directs the activity of another device; for example, the receiver/decoder circuit directs the activity of the starter, ignition, fuel injector, and/or conditional transmitter.



Therefore, like the asserted patents, Frossard has three control or processing devices: (i) a computer or telephone, (ii) an intermediate server, and (iii) a control circuit in the vehicle to a control a system of the vehicle.  In Frossard, the user's computer sends an instruction to the intermediate server which then verifies the user and command and then sends a signal to the control circuit in the vehicle which controls the vehicle's function.  Accordingly, the Court rejects JCMS's argument that the prior art does not anticipate or render the claimed invention obvious on the theory that it does not teach a three control device system.

Based on the above, the Court finds there is no genuine issue of material fact that Claim 20 of the '405 Patent is invalid as anticipated.  Claim 20 of the '405 Patent is the broadest in

scope of the asserted patents.  Claim 20 is directed solely to the three control device system. Based on the evidence in the record, a reasonable jury could only conclude that Frossard teaches every claim limitation contained in dependent Claim 20 and independent Claim 16 from which Claim 20 depends.

### 2. Claim Limitations Specifying Using the Internet Would Have Been Obvious to a Person of Ordinary Skill in the Art

Besides setting forth the three control device system, Claim 15 of the '405 Patent, Claims 13, 17, and 28 of the '076 Patent, Claims 64, 85, and 92 of the '130 Patent, and Claims 21, 22, 24, 25, 33, and 36 of the '363 Patent contain an additional claim limitation requiring that the user's computer communicate to the intermediate computer server over the internet.  For example, Claim 21 of the '363 Patent requires that a user send a signal from his computer using the Internet or World Wide Web to an intermediate processing device that is "associated with a web site."

Claim 21 states as follows:

> 21. An apparatus, comprising:
>
> a first processing device, wherein the first processing device at least one of generates a first signal and transmits a first signal for at least one of activating, de-activating, disabling, re-enabling, and controlling an operation of, at least one of a vehicle system, a vehicle equipment system, a vehicle component, a vehicle device, a vehicle equipment, and a vehicle appliance, of or located at a vehicle, wherein the first processing device is associated with a web site, and further wherein the first processing device is located at a location remote from the vehicle,
>
> wherein the first processing device at least one of generates the first signal and transmits the first signal in response to a second signal, wherein the second signal is a at least one of generated by a second processing device and transmitted from a second processing device, wherein the second processing device is located at a location which is remote from the first processing device and remote from the vehicle, wherein the first processing device

determines whether an action or an operation associated with information contained in the second signal, to at least one of activate, de-activate, disable re-enable, and control an operation of, the at least one of a vehicle system, a vehicle equipment system, a vehicle component, a vehicle device, a vehicle equipment, and a vehicle appliance, is an authorized or an allowed action or an authorized or an allowed operation, and further wherein the first processing device at least one of generates the first signal and transmits the first signal to a third processing device if the action or the operation is determined to be an authorized or an allowed action or an authorized or an allowed operation, wherein the third processing device is located at the vehicle,

wherein the second signal is transmitted to the first processing device via, on, or over, at least one of the Internet and the World Wide Web, and further wherein the second signal is automatically received by the first processing device, wherein the first signal is transmitted to and automatically received by the third processing device, wherein the third processing device at least one of generates a third signal and transmits a third signal for at least one of activating, de-activating, disabling, re-enabling, and controlling an operation of, the at least one of a vehicle system, a vehicle equipment system, a vehicle component, a vehicle device, a vehicle equipment, and a vehicle appliance, in response to the first signal.  (Emphasis added.)

Having been filed in 1992, Frossard does not specifically disclose using the "Internet." JCMS argues that the use of the Internet to communicate signals between the claimed devices is a patentable distinction from the prior art; thus, according to JCMS, claims mentioning the Internet are not anticipated or obvious.

For purposes of summary judgment, the Court agrees with JCMS that Frossard does not disclose using the "Internet" or a website.  Because a claim is anticipated only "if each and every limitation is found either expressly or inherently in a single prior art reference," Whitserve, LLC v. Computer Packages, Inc., 694 F.3d 10, 21 (Fed. Cir. 2012), whether the asserted claims specifying the Internet are invalid must be analyzed for obviousness for purposes of this summary judgment motion.

20

A patent claim is invalid as "obvious" under 35 U.S.C. § 103(a) where "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time invention was made to a person having ordinary skill in the art to which said subject matter pertains." The obviousness determination is made at the time of the invention, presumably the filing date of the patent application on which priority is based. The parties agree that the priority date for all the claims specifying the use of the Internet is March 1996.

Taking the evidence in the light most favorable to JCMS as the non-movant, the Court finds that the asserted claims having additional claim limitations directed to the Internet would have been obvious to the hypothetical person of ordinary skill in the art in 1996 in the context of the Frossard prior art system. In other words, knowing of Frossard and of the recent advances and in popularity of the Internet computer communication in 1996, the hypothetical person of ordinary skill in the art would have known to modify Frossard with the Internet. In reaching this conclusion, the Court is mindful that it is not to analyze the obviousness of the patented invention with hindsight. KSR, 550 U.S. at 421 ("A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon ex post reasoning.").

With a filing date of 1992, it is undisputed that Frossard discloses using a computer on a "Minitel" computer network to send a signal from the user's computer to the intermediate server. Developed in Europe, and heavily used in France, the Minitel computer network was essentially a predecessor in popularity to the Internet and World Wide Web. See, e.g., Wilhelm Dec. ¶¶ 51, 180-184 (Dkt. 59-10.) Using the Minitel network, people were able to access telephone

directories and other databases, and purchase products over the computer network.  Id.; 12/2/2015 Koperda Report at E-40 (Dkt. 78-1).

The Court finds that it would have been obvious to a person of ordinary skill in the art to modify the system taught in Frossard to use the more modern popular computer communication network of the Internet.  It would have been common sense to alter the system taught by Frossard for use with the Internet as it was the popular computer communication network in 1996.  KSR, 550 U.S. at 416 ("The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results.").

Federal Circuit case law supports the Court's conclusion.  On numerous occasions, the Federal Circuit has held it was obvious to update an existing system with new or alternative technology as it becomes available.  For example, in Soverain Software LLC v. Newegg Inc., 705 F.3d 1333 (Fed. Cir. 2013), the Federal Circuit held it would have been obvious to modify a known computer communication system to be used with the Internet.  Specifically, the Federal Circuit stated:

> [Patentee] argues its system is superior to the [prior art] because the system of the patents in suit is adapted to the Internet, whereas the [prior art] operated on a pre-Internet network.  In Muniauction, this court held that "conducting previously known methods through an Internet web browser was obvious because it amounted to no more than applying the use of the Internet to existing electronic processes at a time when doing so was commonplace." 532 F.3d at 1327.  Precedent agrees . . .  that a person of ordinary skill could have adapted the prior art to known browser capabilities when these capabilities became commonplace, and that it was obvious to do so.

Soverain, 705 F.3d at 1340; see also Western Union Co. v. MoneyGram Payment Sys., 646 F.3d 1361, 1370 (Fed. Cir. 2010) ("The claim primarily adds the use of internet-based communications, specifically TCP/IP protocol [to the prior art system].  We conclude that it

would have been obvious for a person of ordinary skill in the art to use internet-based protocols in networking the systems used in the [prior art]."); In re Mettke, 570 F.3d 1356, 1360-1361 (Fed. Cir. 2009) (holding it obvious to add Internet access to a prior art kiosk that included a fax-machine).  The patents in dispute in Soverain (U.S. Patent No. 5,715,314) and In re Mettke (U.S. Patent No. 5,602,905) had filing dates of October 1994 and January 1995, respectively.  Because the patents in Soverain and In re Mattke had filing dates before the March 1996 priority date for the asserted claims in our case, the Federal Circuit's finding that modifying the prior art systems for the Internet was obvious is applicable in our case a fortiorari.

Accordingly, taking the evidence in light most favorable to the non-movant JCMS, the Court finds that the asserted claims that "apply[] the use of the Internet to existing electronic processes" of Frossard are invalid as a matter of law for being obvious.  Soverain, 705 F.3d at 1340.

### 3. The Claim Limitation "determines whether an action . . . is an authorized or an allowed action" is Disclosed in Frossard

In addition to requiring the three control/processing device system and use of the Internet, Claim 21 of the '363 Patent requires that the intermediate device determine whether an action or operation for controlling a vehicle system is an authorized or allowed action or operation, and, if so, then transmit a signal to the vehicle.  Claims 22, 24, 25, 33, and 36, which depend from Claim 21, likewise include this claim limitation.

Claim 21 of the '363 Patent is reproduced below with the disputed claim language underlined:

21. An apparatus, comprising:

a first processing device, wherein the first processing device at least one of generates a first signal and transmits a first signal for at least one of activating, de-activating, disabling, re-enabling, and

23

controlling an operation of, at least one of a vehicle system, a vehicle equipment system, a vehicle component, a vehicle device, a vehicle equipment, and a vehicle appliance, of or located at a vehicle, wherein the first processing device is associated with a web site, and further wherein the first processing device is located at a location remote from the vehicle,

wherein the first processing device at least one of generates the first signal and transmits the first signal in response to a second signal, wherein the second signal is a at least one of generated by a second processing device and transmitted from a second processing device, wherein the second processing device is located at a location which is remote from the first processing device and remote from the vehicle, wherein the first processing device determines whether an action or an operation associated with information contained in the second signal, to at least one of activate, de-activate, disable re-enable, and control an operation of, the at least one of a vehicle system, a vehicle equipment system, a vehicle component, a vehicle device, a vehicle equipment, and a vehicle appliance, is an authorized or an allowed action or an authorized or an allowed operation, and further wherein the first processing device at least one of generates the first signal and transmits the first signal to a third processing device if the action or the operation is determined to be an authorized or an allowed action or an authorized or an allowed operation, wherein the third processing device is located at the vehicle,

wherein the second signal is transmitted to the first processing device via, on, or over, at least one of the Internet and the World Wide Web, and further wherein the second signal is automatically received by the first processing device, wherein the first signal is transmitted to and automatically received by the third processing device, wherein the third processing device at least one of generates a third signal and transmits a third signal for at least one of activating, de-activating, disabling, re-enabling, and controlling an operation of, the at least one of a vehicle system, a vehicle equipment system, a vehicle component, a vehicle device, a vehicle equipment, and a vehicle appliance, in response to the first signal.  (Emphasis added.)

When the extra language is stripped away, the disputed claim language in Claim 21

becomes clearer: "21. An apparatus . . . wherein the first processing device determines whether

an action or an operation associated with the information contained in the second signal . . . is an

authorized or an allowed action or an authorized or an allowed operation, and . . . transmits the first signal to a third processing device if the action or the operation is determined to be an authorized or an allowed action or an authorized or an allowed operation. . . ."

The written description sections of the asserted patents teach that, upon theft of the vehicle, the vehicle's owner or other user may control a vehicle system by sending a signal containing an instruction to the vehicle via an intermediate website. The written description of the '363 Patent discloses that the signal may contain two types of codes: (1) an access code and (2) a command code. The written description states that the access code "provide[s] for security measures which may be taken in conjunction with the use of the apparatus." '363 Pat. col. 4 ll. 11-13. In effect, the access code is a type of password confirming that the use of the patented apparatus is authorized by the vehicle's owner. The command code is an instruction to control a vehicle system such as to turn off the ignition system to disable the vehicle. Id. at col. 6 ll. 28-30.

Looking to the example embodiment shown in Figure 6A of the '363 Patent (reproduced below), and starting at reference number 60, the authorized user starts the patented system by entering a valid access code. Id. at col. 6 ll. 20-27, col. 7 ll. 12-20, and col. 38 ll. 40-43. In effect, by using a valid access code, the system verifies that the user is authorized and that the use is not accidental such as by accidentally pressing buttons on a transmitter. Id. At step 61, the patented apparatus receives the command code from the vehicle's owner. The command code can be of a variety of codes to control a number of vehicle systems. At steps 62 and 62A, the patented system will read the command code and identify the command code. "At step 63, the CPU will determine if the [command] code is a valid code . . . . If the code is invalid, the CPU 4 will return to step 76 thereby exiting the operational program . . . and the apparatus 1 will await a next access code and command code transmission." Id. at col. 39 ll. 11-16.

25



**FIG. 6A**

The Court previously construed the disputed claim language to mean "whether the vehicle's owner (or other authorized person) has authorized the action and whether the action is permitted." 8/26/2015 Op. & Order at 28-33. Although it does not affect the Court's ruling on this motion because this claim limitation is clearly present in Frossard, the Court now clarifies its previous claim construction ruling. The correct claim construction for this claim limitation is that the intermediate processing device determines whether the vehicle owner (or other authorized person) has authorized the action or whether the action is permitted (e.g., one of the permissible options). The claim language uses the "or" conjunction.

JCMS argues that while Frossard teaches authorizing the user (e.g., access code or passcode), Frossard does not teach determining whether or not the action or operation entered by

the user is permitted.  In other words, JCMS argues that Frossard does not teach confirming that the command code entered by the user is valid or allowed.  JCMS Resp. Br. 28.

The Court finds that Frossard clearly teaches the asserted claim limitation.  Specifically, Frossard teaches having the user send an "access code" (passcode or password), which verifies an authorized user, and an "intervention code or order" containing instructions to shut down the vehicle.  Frossard states that the intervention code is "itself a personalized code associated with the movable or mobile equipment. . . ."  Frossard at 5.  Frossard states that after the access code and the intervention code are verified, the intermediate server sends a signal to the vehicle. For example, Frossard states:

> Preferably, the aforesaid two codes are transmitted to server center 1 by the subscriber or an authorized person in order to generate, upon positive response to a control criterion, a request to shut down the aforesaid equipment 3.  Of course, in the case that the reception of the personalized code and of the intervention code is handled by an operator, the control criterion may consist simply in the verification of the access code or at least of the current validity of such an access code.  In this case, the transmission of the intervention order or code may then be effected following verification of the correspondence of the requested order and of certain characteristics of the aforesaid moveable or mobile equipment.
>
> When the reception of the access code and of the corresponding intervention order or code is handled by automatic means, the aforesaid criteria may have the form of triage and comparison criteria, which will not be described in detail, because they correspond to customary techniques in the matter of automatic data processing.

Id. at 5.

Accordingly, the Court finds that Frossard discloses the claim limitation:  "determines whether an action or an operation associated with information contained in the second signal . . .

is an authorized or an allowed action or an authorized or an allowed operation. . . ."  There is no

genuine of issue of material fact as to whether Frossard discloses this claim limitation.

>    **4.  The Claim Limitation "generating at least one of a confirmation signal and a notification signal . . ." is Disclosed in Frossard or Would Have Been Obvious**

Dependent Claim 144 of the '130 Patent adds the limitation of "generating at least one of

a confirmation signal and a notification signal for providing information regarding at least one of

a control, a monitoring, a disabling, and a re-enabling, function has been carried out and is

successful or unsuccessful" to the independent claims.  In other words, this claim limitation

provides that the system send a signal back to the vehicle owner (or other authorized user)

informing the vehicle owner that turning off of the vehicle was successful or unsuccessful.  Other

asserted dependent claims have similar claim limitations, particularly Claim 17 of the '405

Patent and Claim 65 of the '076 Patent.

JCMS argues that the prior art does not disclose the claimed confirmation signal.

Without much explanation, JCMS states: "Frossard is directed to the Minitel network, is an A-B

system, and does not perform the 'generating' required of this claim element."  JCMS Resp. Br.

30-31.

Frossard clearly discloses a confirmation signal that confirms that the vehicle has

received the shutdown command and instructed the vehicle system to shut down; thereby, the

vehicle owner has been informed as to the status of the vehicle component.  Specifically,

Frossard discloses that the vehicle can have a conditional transmitter (61) that will transmit a

message to the vehicle owner upon receiving and executing the order message for controlled

shutdown of the vehicle.  For example, Frossard states: "this conditional transmitter 61

conditionally transmitting, upon reception of the order message for controlled shutdown of the

equipment, a message M' on Fig. 4 making it possible to ensure signaling and location of mobile equipment 3 to a specified radio beacon."  Frossard at 11.  This language from Frossard literally satisfies the asserted claim language of generating a signal to notify the vehicle owner that the control device in the vehicle has received the shut down command, instructed the interface device in the vehicle to shut down the vehicle system, and sent a current location of the vehicle to the vehicle owner in order to allow the owner to locate the vehicle.

Moreover, the idea of sending a confirmation signal when a vehicle is remotely shutdown was known.  For example, European Patent No. EP039596, published on October 31, 1990 and issued to inventor Bianco ("Bianco"), teaches sending a "confirmation" signal to the owner of the vehicle after receiving instructions to shut down the vehicle.  Bianco col. 4-5 ll. 57-18 (Dkt. 59-31).  Thus, there is no genuine issue of material fact that the type of confirmation signal in the asserted claims was known in the field of the asserted patents.

Based on the undisputed facts, the Court finds that a person of ordinary skill in the art (an electrical engineer with 3-4 years industry experience) would have known to use a confirmation signal, such as taught in Bianco, in combination with the three control device system of Frossard, because the desirability of such a function in this technology area was known.  In fact, Frossard itself teaches sending a confirmation signal to the owner of the vehicle to provide information regarding whether an instruction to control a vehicle function was received and the location of the vehicle.  KSR, 550 U.S. at 416 ("The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results.").

  **5.  Dependent Claims Specifying that the Second Processing Device be "a wireless device" (e.g., Cellular Telephone or Smart phone) Would Have Been Obvious**

29

Claims 24 and 25 of the '363 Patent depend from independent Claim 21.  Claims 24 and 25 require that the user use a "wireless device" such as a cellular telephone or a personal digital assistant to send the signal to the intermediate website.  Claims 24 and 25 state:

> 24.  The apparatus of claim 21, wherein the second processing device is a wireless device.
>
> 25.  The apparatus of claim 21, wherein the second processing device is at least one of a cellular telephone and a personal digital assistant.

'363 pat. col. 109 ll. 15-19.

FCA argues that these claim limitations would have been obvious to a person of ordinary skill in the art at the time of the invention.  JCMS argues that Frossard does not disclose a wireless device that can be used by the vehicle owner and such a wireless device would not have been obvious.

The Court agrees with FCA.  A person of ordinary skill in the art would know to substitute a cellular telephone or personal digital assistant for the wired computer or telephone of Frossard.  Frossard discloses using a telephone or a Minitel network computer system.  It would have been common sense to know that a cellular telephone or personal digital assistant could be used in place of a regular telephone or a Minitel networked computer when such devices became available.  KSR, 550 U.S. at 416 ("The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results.").  Updating the Frossard system with this new technology would have been obvious.  Leapfrog Enters., Inc. v. Fisher-Price, Inc., 485 F.3d 1157, 1161 (Fed. Cir. 2007) (holding that applying modern electronics to old technology was obvious).

> **6.  Claims Specifying the Ability to Detect an Occurrence such as Theft of the Vehicle and to Notify the Vehicle Owner Would Have Been Obvious**

Claims 33 of the '363 Patent and 68 of the '076 Patent are dependent claims. These claims require that the antitheft system monitor the vehicle and notify the owner of the vehicle if <u>inter alia</u> the vehicle is stolen, so that the owner of the vehicle may remotely shut down the vehicle. For example, Claim 33 of the '363 Patent states:

> 33. The apparatus of claim 21, wherein the apparatus detects at least one of a vehicle use, an unauthorized use of the vehicle, a theft of the vehicle, and an occurrence warranting providing notice to at least one of an owner, a user, and an authorized operator, of the vehicle, and further wherein the apparatus transmits a message containing information regarding the at least one of a vehicle use, an unauthorized use of the vehicle, a theft of the vehicle, and an occurrence warranting providing notice to at least one of an owner, a user, and an authorized operator, of the vehicle, and further wherein the message is transmitted to the second processing device.

The claimed feature was clearly known in this particular field of technology. It is undisputed that this feature is disclosed in U.S. Patent No. 5,276,728 to inventor Pagliaroli ("Pagliaroli"). Pagliaroli was filed in 1991 and is undisputed prior art to the asserted claims. Pagliaroli discloses a remote control antitheft system similar to the invention claimed in the asserted patents. In Pagliaroli, if a vehicle is stolen, the owner of the vehicle can remotely shut down the vehicle by using his telephone to send a shutdown command to the vehicle. Accordingly, Pagliaroli is squarely in the technology area of the asserted claims. Pagliaroli teaches having sensors on the vehicle to monitor whether someone is trying to break into or steal the vehicle. If someone tries to steal the vehicle, the "antitheft sensors" will detect such activity and then a transmitter on the vehicle sends a notification to the owner of the vehicle. The owner of the vehicle can then take appropriate action such as to send a shutdown command via a telephone to the vehicle (such as by turning off the vehicle's ignition system). For example, Pagliaroli states:

> The theft sensors 12 are optionally couple to a transmitter 28. Once activated the transmitter 28 transmits a signal 42 that can be received by the portable receiver 30. The portable receiver device 30 then generates an audio and/or visual signal that informs a person in possession of the portable receiver 30 of the tampering or attempted theft of the automobile.

Pagliaroli col. 4 ll. 46-52.

The Court finds that it would be obvious to a person of ordinary skill in the art to modify the structure of Frossard to contain the claimed anti-theft monitoring and notification functionality. Anti-theft monitoring and notification functionality was already known in the particular area of vehicle anti-theft systems, and adding this functionality to Frossard would have been logical. KSR, 550 U.S. at 416 ("The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results.").

### 7. Claim 18 of the '076 Patent Specifying an "Interface" is Anticipated by Frossard

Claim 18 of the '076 Patent is a dependent claim. Claim 18 requires that the control device in the vehicle communicate with an "interface device" to control a vehicle system. For example, Claim 18 of the '076 Patent states:

> 18. The apparatus of claim 3, further comprising: an interface device, wherein the interface device provides an interface between the first control device and the at least one of a vehicle system, a vehicle component, a vehicle device, a vehicle equipment, a vehicle equipment system, and a vehicle appliance.

'076 pat. col. 109 ll. 7-12.

Frossard clearly discloses using an "interface." For example, Figure 2 of Frossard shows using an "Equipment Interface 5" to control vehicle systems in order to shut down or restart the vehicle. Figure 2 of Frossard is shown below:



Frossard states that equipment interface is connected to the shutdown logic module 423 and a restart logic module and communicates with various the vehicle systems to shut down or restart the system.  See, e.g., Frossard at 8.

Based on the above disclosure, the Court finds that a reasonable jury could only find that Frossard discloses the claimed interface and thus Claim 18 is invalid as being anticipated.

### D.  Fourth Graham Factor: Secondary Considerations

The fourth Graham factor that the Court must consider is whether there are any secondary considerations that support patentability.  "Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy."  Graham, 383 U.S. at 18. Secondary considerations serve "to guard against slipping into use of hindsight and to resist the temptation to read into the prior art the teachings of the invention in issue."  Id. at 36 (citations omitted).

JCMS argues that second considerations support its position that asserted claims are nonobvious. Specifically, JCMS argues inter alia that other companies have licensed the asserted patents, thereby implicitly showing that others believe the asserted claims to be nonobvious.

Taking the evidence in the light most favorable to the Plaintiff, the Court has considered the evidence provided by Plaintiff in the light most favorable to the Plaintiff. As the Federal Circuit has held in other cases, the mere existence of licenses is insufficient to overcome the strong evidence of obviousness when the express teachings of the prior art would have motivated a person of ordinary skill in the art to make the claimed invention. SIBIA Neurosciences, Inc. v. Cadus Pharma. Corp., 225 F.3d 1349, 1358-1359 (Fed. Cir. 2000). The Court concludes, taking the factual evidence in the record in a light most favorable to the non-movant JCMS, that the asserted claims as a whole would have been obvious to a person of ordinary skill in the art.

### E.  Summary of the Court's Obviousness and Anticipation Conclusions

Based on the above analysis, the Court concludes as follows:

Claim 20 of the '405 Patent (three control device system) is anticipated by Frossard.

Claim 15 of the '405 Patent, Claims 13, 17, and 28 of the '076 Patent, and Claims 64, 85, and 92 of the '130 Patent (three control device system using the Internet) are obvious in light of Frossard.

Claim 18 of the '076 Patent (three control device system having an interface) is anticipated by Frossard.

Claim 17 of the '405 Patent, Claims 65 and 68 of the '076 Patent, and Claim 144 of the '130 Patent (three control device system with status/notification/confirmation functionality) are

obvious in light of Frossard (status/confirmation) or obvious in light of Frossard in combination with Pagliaroli (notification/occurrence) or Bianco (confirmation/status).

Claims 21 and 36 of the '363 Patent (three device control system with authorization/Internet functionality) are obvious in light of Frossard.

Claims 22, 24, 25, and 33 of the '363 Patent (three control device system with authorization/Internet/wireless/occurrence functionality) are obvious in light of the combination of Frossard and Pagliaroli.

### F. Defendant's Non-Infringement Arguments and Plaintiff's Motion for Summary Judgment of Infringement

Because the Court has held that all the asserted claims are invalid, FCA's arguments concerning non-infringement are moot.  Likewise, Plaintiff's Motion for Summary Judgment of Infringement of U.S. No. 7,397,363 by UConnect Access is moot.

## IV.  CONCLUSION

For the reasons stated above, the Court grants FCA's motion (Dkt. 59) as to invalidity of the asserted claims.  Specifically, the Court holds the following claims are invalid: Claims 15, 17, and 20 of U.S. Patent No. 5,917,405; Claims 13, 17, 18, 28, 65, and 68 of U.S. Patent No. 6,542,076; Claims 64, 85, 92, and 144 of U.S. Patent 6,549,130, and Claims 21, 22, 24, 25, 33, and 36 of U.S. Patent No. 7,397,363.  The Court denies as moot JCMS's Motion for Summary Judgment of Infringement of U.S. Patent No. 7,397,363 by UConnect Access (Dkt. 57).

This case is dismissed with prejudice.   A separate judgment will be entered.

SO ORDERED.


Dated:  June 10, 2016                                          s/Mark A. Goldsmith
     Detroit, Michigan                                       MARK A. GOLDSMITH
                                    United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 10, 2016.

s/Karri Sandusky
Case Manager
