UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOAO CONTROL & MONITORING
SYSTEMS, LLC,

        Plaintiff,

                                Case No. 13-cv-13957

v.

                                HON. MARK A. GOLDSMITH

CHRYSLER GROUP LLC,

        Defendant.

_____/

**OPINION AND ORDER**
**DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (Dkt. 183)**

This is a patent infringement case in which Plaintiff Joao Control & Monitoring Systems, LLC ("JCMS") alleges that Defendant FCA US LLC (formerly Chrysler Group LLC) ("FCA") has infringed four of its patents by manufacturing, selling, and using its UConnect Access product. On June 10, 2016, the Court issued an opinion and order granting summary judgment as to invalidity, holding that the asserted claims in the four patents were anticipated and/or obvious based on prior art. 6/10/2016 Op. & Order (Dkt. 181).

Before the Court is JCMS's motion for reconsideration (Dkt. 183). JCMS requests that the Court reconsider one aspect of its June 10, 2016 summary judgment opinion. Specifically, JCMS requests that the Court reconsider its conclusion that independent Claim 21 and certain dependent claims of U.S. Patent No. 7,397,363 ('363 Patent) are invalid for obviousness under 35 U.S.C. § 103 based on prior art. JCMS gives three reasons why its motion for reconsideration should be granted: (i) new deposition testimony from an expert witness, Richard A. Bennett, which was previously unavailable, supports the conclusion that the prior art does not disclose the "authorized or allowed" claim limitation of Claim 21 of the '363 Patent; (ii) the Court incorrectly

1

concluded that the Frossard prior art patent application discloses the "authorized or allowed" claim limitation in Claim 21 of the '363 Patent; and (iii) FCA made an admission at oral argument concerning the validity of the asserted claims of the '363 Patent.

The issues have been adequately presented in the parties' briefs, and oral argument is not needed for the Court to decide the present motion.  E.D. Mich. LR 7.1(f)(2).  For the reasons stated below, the Court denies the motion.

## I.  BACKGROUND

As explained fully in the Court's prior opinions, JCMS alleged that FCA has infringed four of its patents by making, selling, using a system named "UConnect Access," including the '363 Patent.  The asserted four patents are all part of the same family of patents.  In total, JCMS asserted 19 claims among the four patents.

The asserted patents relate inter alia to a security system to prevent a thief from stealing a vehicle or alternatively that allows the owner of a vehicle to recover a stolen vehicle.  In one example embodiment of the invention, the asserted patents teach a system that allows a vehicle owner, after a thief steals his car, to remotely turn off the vehicle or lock the thief out of the vehicle after his getaway.  When his car is stolen, the vehicle's owner could use his cellular telephone or personal computer to access an online web site (or a central security office), from which he could control various vehicle systems.  The web site or central security office would then communicate with the vehicle's onboard computer, thereby allowing the vehicle's owner to control systems of the vehicle.

More specifically, the patented system allows the vehicle's owner to initiate certain actions, including turning off the fuel supply system, the exhaust system, or ignition system; locking the vehicle hood; turning on an interior or exterior siren, alarm, or horn; activating an

intercom system for providing communications between vehicle owner and the vehicle occupants; and/or activating a video and/or audio recording device within the vehicle. To avoid accidents, the patented system would only allow the vehicle owner to take these actions when it is safe to do so, such as when the thief turns the engine off or the vehicle is stopped.

After the parties submitted extensive written briefs and after the Court conducted a claim construction hearing, the Court issued a written claim construction decision construing the parties' disputed claim terms. 8/26/2015 Op. & Order (Dkt. 53). Thereafter, the parties filed cross-motions for summary judgment. On June 10, 2016, the Court issued an opinion and order granting FCA's motion for summary judgment as to invalidity of the 19 asserted claims. The Court held that all 19 asserted claims were anticipated and/or obvious based mainly on a prior published European patent application 92400712.3 to inventor Frossard, entitled "System for Controlled Shutdown and for Location of a moveable or mobile equipment" ("Frossard") (Dkt. 59-33). 6/10/2016 Op. & Order.

On June 24, 2016, JCMS filed its motion for reconsideration. JCMS requests that the Court reconsider one aspect of its summary judgment opinion. Specifically, JCMS requests that the Court reconsider the validity of independent Claim 21 of the '363 Patent and the dependent claims that depend from Claim 21. Pursuant to the Court's standard practice, the Court allowed FCA to submit a response brief (Dkt. 187), and the Court allowed JCMS to submit a final reply brief (Dkt. 188).

## II.  STANDARD OF DECISION

Local Rule 7.1(h)(3) sets forth the standard for a motion for reconsideration, which states:

> (3) Grounds. Generally, and without restricting the Court's discretion, the Court will not grant motions for rehearing or

> reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the Court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. LR 7.1(h)(3).  "A palpable defect is a defect which is obvious, clear, unmistakable, manifest, or plain."  Am. Pie Pizz, Inc. v. Holton Holdings, Inc., No. 2:10-cv-13106, 2011 WL 652834, *1 (E.D. Mich. Feb. 14, 2011) (quoting Ososki v. St. Paul Surplus Lines Ins. Co., 162 F. Supp. 2d 714, 718 (E.D. Mich. 2001).  "A motion for reconsideration should not be used liberally to get a second bite at the apple, but should be used sparingly to correct actual defects in the court's opinion."  Estate of Fahner ex rel. Fahner v. Cnty. of Wayne, No. 2:08-cv-14344, 2012 WL 2087070, *1 (E.D. Mich. June 8, 2012).  This type of motion is for the "limited purpose of allowing a court to correct manifest errors of law or fact."  Jamil v. McQuiggin, No. 00-CV-73826, 2011 WL 4368010, *2 (E.D. Mich. Sept. 19, 2011).

"A trial court may grant reconsideration under Fed. R. Civ. P. 59(e) for any of four reasons: (1) because of an intervening change in the controlling law; (2) because evidence not previously available has become public; (3) to correct a clear error of law; or (4) to prevent injustice."  Chrysler Realty Co., LLC v. Design Forum Architects, Inc., 544 F. Supp.2d 609, 618 (E.D. Mich. 2008).  "[A]bsent a significant error that changes the outcome of a ruling on a motion, the Court will not provide a party with an opportunity to relitigate issues already decided."  Maiberger v. City of Livonia, 724 F. Supp.2d 759, 780 (E.D. Mich. 2010).

## III.  ANALYSIS

As explained in detail below, each of the three asserted grounds for reconsideration is without merit.

### A.  Deposition Testimony of Expert Witness Richard Bennett

4

JCMS argues that new evidence, which was not previously available, in form of deposition testimony from Richard Bennett, an expert witness in another case, is effectively an admission by FCA, or at least is persuasive evidence, that the prior art does not disclose the "authorized or allowed" claim limitation of Claim 21 of the '363 Patent.  JCMS notes that the deposition of Bennett took place on April 28th and April 29th, which was after oral argument and all written briefs were submitted to the Court on the cross-motions for summary judgment.

The Court does not find Bennett's testimony to be any type of admission as to FCA.  The deposition transcript submitted by JCMS is from the case of <u>Coxcom, LLC v. Joao Control & Monitoring Systems, LLC</u> (IPR2015-01762) and does not involve FCA.  Bennet Dep, Ex. B to Pl. Mot., at 1 (Dkt. 184-2).  Moreover, at the deposition, Coxcom was represented by an entirely different law firm (Kilpatrick Townsend & Stockton LLP) than the one representing FCA in this case (Venable LLP).  The only connection between Bennett and FCA is that "Bennett was also retained by Venable on behalf of another client that filed IPRs against claims of the JCMS Patent Portfolio."  Pl. Br. at 7 n.2 (Dkt. 183).  There is no substantial relationship between FCA and Bennett such that statements made by Bennett should be imputed to FCA.

**B.  The Claim Limitation "determines whether an action . . . is an authorized or an allowed action" is Disclosed in Frossard**

JCMS argues that the claim limitation "determines whether an action . . . is an authorized or an allowed action" is not disclosed in Frossard.  The Court disagrees and holds that JCMS has not established a palpable defect in the Court's summary judgment decision.

In addition to requiring the three control/processing device system, Claim 21 of the '363 Patent requires that the intermediate device determine whether the requested action or operation for controlling a vehicle system is an authorized or allowed action or operation, and, if so, then

the intermediate device will transmit a signal to the vehicle containing the action or operation to be performed.

Claim 21 of the '363 Patent is reproduced below with the disputed claim language underlined:

> 21. An apparatus, comprising:
>
> a first processing device, wherein the first processing device at least one of generates a first signal and transmits a first signal for at least one of activating, de-activating, disabling, re-enabling, and controlling an operation of, at least one of a vehicle system, a vehicle equipment system, a vehicle component, a vehicle device, a vehicle equipment, and a vehicle appliance, of or located at a vehicle, wherein the first processing device is associated with a web site, and further wherein the first processing device is located at a location remote from the vehicle,
>
> wherein the first processing device at least one of generates the first signal and transmits the first signal in response to a second signal, wherein the second signal is a at least one of generated by a second processing device and transmitted from a second processing device, wherein the second processing device is located at a location which is remote from the first processing device and remote from the vehicle, wherein the first processing device <u>determines whether an action or an operation associated with information contained in the second signal</u>, to at least one of activate, de-activate, disable re-enable, and control an operation of, the at least one of a vehicle system, a vehicle equipment system, a vehicle component, a vehicle device, a vehicle equipment, and a vehicle appliance, <u>is an authorized or an allowed action or an authorized or an allowed operation</u>, and further wherein the first processing device at least one of generates the first signal and transmits the first signal to a third processing device if the action or the operation is determined to be an authorized or an allowed action or an authorized or an allowed operation, wherein the third processing device is located at the vehicle,
>
> wherein the second signal is transmitted to the first processing device via, on, or over, at least one of the Internet and the World Wide Web, and further wherein the second signal is automatically received by the first processing device, wherein the first signal is transmitted to and automatically received by the third processing device, wherein the third processing device at least one of

6

generates a third signal and transmits a third signal for at least one of activating, de-activating, disabling, re-enabling, and controlling an operation of, the at least one of a vehicle system, a vehicle equipment system, a vehicle component, a vehicle device, a vehicle equipment, and a vehicle appliance, in response to the first signal.  (Emphasis added.)

When the extra language is stripped away, the disputed claim language in Claim 21 is the following: "21. An apparatus . . . wherein the first processing device determines whether an action or an operation associated with the information contained in the second signal . . . is an authorized or an allowed action or an authorized or an allowed operation, and . . .  transmits the first signal to a third processing device if the action or the operation is determined to be an authorized or an allowed action or an authorized or an allowed operation. . . ."

The written description section of the patent of the '363 Patent gives insight into what this claim limitation means.  The written description section of the '363 Patent teaches that, upon theft of the vehicle, the vehicle's owner or other user may control a vehicle system by remotely sending a signal containing an instruction to the vehicle via an intermediate web site.  The written description section of the '363 Patent states that the signal may contain two types of codes: (i) an access code and (ii) a command code.  The written description states that the access code "provide[s] for security measures which may be taken in conjunction with the use of the apparatus."  '363 Pat. col. 4 ll. 11-13.  In effect, the access code is a type of password, confirming that the use of the patented apparatus is authorized by the vehicle's owner.  The command code is an instruction to control a vehicle system, such as to turn off the ignition system to disable the vehicle.  Id. at col. 6 ll. 28-30.

Looking to the example embodiment shown in Figure 6A in the '363 Patent, which is shown below, and starting at reference number 60, the authorized user starts the patented apparatus by entering a valid access code.  Id. at col. 6 ll. 20-27, col. 7 ll. 12-20, and col. 38 ll.

7

40-43.  In effect, by using a valid access code, the system verifies that the user is authorized and

that the use is not accidental such as by accidentally pressing buttons on a transmitter.  Id.  At

step 61, the patented apparatus receives the command code from the user.  The command code

can be of a variety of codes to control a number of vehicle systems.  At steps 62 and 62A, the

patented apparatus will read the command code and identify the command code.  "At step 63, the

CPU will determine if the [command] code is a valid code. . . If the code is invalid, the CPU 4

will return to step 76 thereby exiting the operational program . . . and the apparatus 1 will await a

next access code and command code transmission."  Id. at col. 39 ll. 11-16.



**FIG. 6A**

In its claim construction opinion, the Court construed the disputed claim language to

mean "whether the vehicle's owner (or other authorized person) has authorized the action and

whether the action is permitted."  8/26/2015 Op. & Order at 28-33.  In other words, the Court

interpreted the claim language to mean that the system had to both determine that the user was authorized to use the system and determine that the instructions for the vehicle are allowed. In its summary judgment opinion, the Court corrected its previous claim construction. Noting that the claim language uses an "or" in the disjunctive, the Court noted that that "[t]he correct claim construction for this claim limitation is that the intermediate processing device determines whether the vehicle owner (or other authorized person) has authorized the action or whether the action is permitted (e.g., one of the permissible options)." 6/10/2016 Op. & Order at 26.

In its summary judgment decision, the Court found that Frossard clearly satisfies the asserted claim limitation. Specifically, the Court found that Frossard teaches a system where the user enters an "access code" (e.g., password), which verifies an authorized user, and an "intervention code" containing instructions or the vehicle (e.g., to shut down the vehicle). The Court noted that Frossard states that the intervention code is "itself a personalized code associated with the movable or mobile equipment. . . ." Frossard at 5. Frossard states that, after the access code and the intervention code are verified, the intermediate server sends a signal to the vehicle containing the function to be performed. The Court relied upon the following excerpt from Frossard:

> Preferably, the aforesaid two codes are transmitted to server center 1 by the subscriber or an authorized person in order to generate, upon positive response to a control criterion, a request to shut down the aforesaid equipment 3. Of course, in the case that the reception of the personalized code and of the intervention code is handled by an operator, the control criterion may consist simply in the verification of the access code or at least of the current validity of such an access code. In this case, the transmission of the intervention order or code may then be effected following verification of the correspondence of the requested order and of certain characteristics of the aforesaid moveable or mobile equipment.

> When the reception of the access code and of the corresponding intervention order or code is handled by automatic means, the aforesaid criteria may have the form of triage and comparison criteria, which will not be described in detail, because they correspond to customary techniques in the matter of automatic data processing.

Id. at 5.

Based on the above, the Court held that Frossard clearly discloses the claim limitation "determines whether an action or an operation associated with information contained in the second signal . . . is an authorized or an allowed action or an authorized or an allowed operation. . . ." The Court found that there is no genuine of issue of material fact as to whether Frossard taught this claim limitation.

In its motion for reconsideration, JCMS argues that the correct construction of this claim limitation is that the access code and the command code must both be validated, and that Frossard does not disclose validating the "intervention code." According to JCMS, Frossard only discloses verifying that the user is authorized to use the system by verifying the "access code," but Frossard does not disclose confirming the intervention code is allowed. Pl. Br. at 10.

As the Court stated in its summary judgment opinion, because the claim limitation "authorized or allowed" uses the disjunctive "or" the Court holds that the correct claim construction for this claim limitation is that the intermediate processing device only needs to determine whether the user is authorized or whether the action is permitted (e.g., one of the permissible options). The Detailed Description section of the '363 Patent consistently uses the word "authorized" when referring to confirming that the user is authorized. '363 Pat. col. 4 ll. 9-13. For example, the written description section of the '363 Patent uses the terminology "authorized user" and does not use the word "authorized" when describing verifying or

validating the "command code." Id. at col. 6 ll. 20-26 and col. 39 ll. 11-25.  Thus, the Court

holds that its summary judgment construction is correct.

However, even assuming that this claim limitation requires that the intermediate device

determine that the action or operation is allowed (i.e., determine that the command code is valid),

the Court holds, as the Court did in its summary judgment opinion, that Frossard clearly teaches

such validation.  As discussed above, Frossard teaches that after the intermediate device verifies

the access code, the intermediate device confirms that the "intervention code" is allowed.  For

example, Frossard states that the intervention code is "itself a personalized code associated with

the movable or mobile equipment. . . .  In this case, the transmission of the intervention order or

code may then be effected following verification of the correspondence of the requested order

and of certain characteristics of the aforesaid moveable or mobile equipment." Id.  Frossard also

states that "[t]he two codes, the call code [corresponding to the access code] and the code

corresponding to the intervention order, are communicated to the server. . . .  Server Center 1

then establishes one-to-one correspondence between the two aforesaid codes. . . .  The shutdown

is then validated by server center 1. . . ." Id. at 9.

Based on the above, and other teachings from Frossard, the Court holds that JCMS has

not shown a palpable defect in the Court's previous summary judgment opinion.

### C.  FCA Did Not Make an Admission at Oral Argument

As another basis for its motion for reconsideration, JCMS argues that at oral argument on

April 15, 2016, FCA's counsel conceded that using an "access code" does not meet the disputed

claim limitation of determining whether an action or operation is "authorized or allowed".  FCA

disputes that it made any such concession.

The Court finds that FCA did not make such a concession at oral argument. At the time of oral argument on the summary judgment motions, the Court had already construed the disputed claim language to require that the intermediate device (e.g., web site) determine both that the user is authorized to use the system, and that the action or operation is allowed. FCA's discussion of whether the accused UConnect Access system met the "authorized or allowed" claim limitation was in the context of the Court's prior claim construction. FCA's counsel stated that FCA's UConnect Access system authorizes a user by using an "access code," but that the intermediate device in the UConnect Access system does not confirm whether a particular action or operation is allowed before sending a signal containing the command to the vehicle. The Court does not find the language quoted by JCMS from the oral argument to be an admission or concession by FCA's counsel as to the proper construction of the "authorized or allowed" claim limitation.

In any event, as discussed above, even if the use of an access code by itself does not satisfy this disputed claim limitation, the Court finds that Frossard clearly teaches a system where the intermediate device verifies that the action or operation is allowed by validating an "intervention code."

## IV. CONCLUSION

For the reasons stated above, the Court denies Plaintiff JCMS's motion for reconsideration (Dkt. 183).

SO ORDERED.

Dated: October 7, 2016                    s/Mark A. Goldsmith
Detroit, Michigan                          MARK A. GOLDSMITH
                                           United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 7, 2016.

s/Karri Sandusky
Case Manager