# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JOAO CONTROL & MONITORING
SYSTEMS, LLC,

        Plaintiff,

Case No. 13-cv-13957

v.

HON. MARK A. GOLDSMITH

CHRYSLER GROUP LLC,

        Defendant.

_____/

## OPINION & ORDER
### (1) DENYING DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND NON-STATUTORY COSTS (Dkts. 191, 193); AND (2) DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUR-REPLY (Dkt. 199)

In this patent infringement case, Plaintiff Joao Control & Monitoring Systems, LLC ("JCMS") alleges that Defendant FCA US LLC (formerly Chrysler Group LLC) ("FCA") has infringed several of its patents by manufacturing, selling, and using its UConnect Access product. On June 10, 2016, the Court granted FCA's motion for summary judgment as to invalidity, holding that the asserted claims in the patents were invalid as anticipated and/or obvious based on prior art pursuant to 35 U.S.C. §§ 102, 103. See Joao Control & Monitoring Sys., LLC v. Chrysler Grp. LLC, 193 F. Supp. 3d 797 (E.D. Mich. 2016).

This matter is before the Court are FCA's motion for attorneys' fees and non-statutory costs (Dkts. 191 (redacted), 193 (under seal)), and JCMS's motion for leave to file a sur-reply (Dkt. 199). Because oral argument will not aid the decisional process, the motion will be decided based on the parties' briefing. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the Court denies both motions.

## I. BACKGROUND

## A. Overview of the Asserted Patents

JCMS alleged that FCA infringed four patents by making, selling, and using a system named UConnect Access: (i) U.S. Patent No. 5,917,405 ('405 Patent), entitled "Control Apparatus and Methods for Vehicles"; (ii) U.S. Patent 6,549,130 ('130 Patent), entitled "Control Apparatus and Method for Vehicles and/or Premises"; (iii) U.S. Patent No. 6,542,076 ('076 Patent), entitled "Control, Monitoring and/or Security Apparatus and Method"; and (iii) U.S. Patent No. 7,397,363 ('363 Patent), entitled "Control and/or Monitoring Apparatus and Method."

The four patents are all part of the same family of patents and are thus related. The written description sections of the asserted patents are largely the same.

The asserted patents relate inter alia to a security system to prevent a thief from stealing a vehicle or, alternatively, to allow the owner of a vehicle to recover a stolen vehicle. In one example embodiment of the invention, the asserted patents teach a system that allows a vehicle owner, after a thief steals his car, to safely turn off the vehicle or lock out the thief from the vehicle after his getaway. When his car is stolen, the vehicle's owner would use his cellular telephone or personal computer to access an online website (or a central security office), where he could then control various vehicle systems. The website or central security office would communicate with the vehicle's onboard computer, thereby allowing the vehicle's owner to control systems of the vehicle.

More specifically, the patented system allows the vehicle's owner to remotely initiate certain actions, including turning off the fuel supply system, the exhaust system, or the ignition system; locking the vehicle hood; turning on an interior or exterior siren, alarm, or horn; activating an intercom system for providing communications between vehicle owner and the vehicle occupants; and/or activating a video and/or audio recording device within the vehicle.

The patented system would only allow the vehicle owner to turn off these vehicle systems when it is safe to do so, such as when the thief turns off the engine or the vehicle is stopped. The asserted patents also teach that the patented system can have a vehicle position and locating device, which can be utilized to allow the vehicle's owner to determine the position and/or location of the vehicle after it is stolen.

**B. Procedural Background**

On September 16, 2013, this case was transferred to this Court from the U.S. District Court for the Southern District of New York. After substantial discovery, the Court conducted a claim construction hearing on March 24, 2015. The Court then issued a formal claim construction opinion on August 26, 2015. <u>Joao Control & Monitoring Sys., LLC v. Chrysler Grp. LLC</u>, No. 13-cv-13957, 2015 WL 5063260 (E.D. Mich. Aug. 26, 2015).

After the Court issued its claim construction opinion, the parties conducted expert witness discovery. The parties then filed cross-motions for summary judgment. The Court heard oral argument on April 15, 2016, and allowed supplemental briefing after oral argument (Dkts. 127, 133). On June 10, 2016, the Court issued a written opinion and order granting FCA's motion for summary judgment as to the invalidity of the nineteen asserted claims and dismissed the case with prejudice. <u>Joao Control</u>, 193 F. Supp. 3d at 821. Based on a prior published European patent application 92400712.3 to inventor Frossard, entitled "System for Controlled Shutdown and for Location of a moveable or mobile equipment" (Frossard") (Dkt. 59-33), the Court concluded that all nineteen asserted claims were anticipated and/or obvious.

JCMS filed a motion for reconsideration as to the validity of one of the asserted independent claims and related dependent claims (Dkt. 183). Pursuant to the Court's standard practice, the Court allowed FCA to submit a response brief (Dkt. 187), and allowed JCMS to

submit a final reply brief (Dkt. 188). On October 7, 2016, the Court issued a written opinion and order denying JCMS's motion for reconsideration. <u>Joao Control & Monitoring Sys., LLC v. Chrysler Grp. LLC</u>, No. 13-cv-13957, 2016 WL 5859084 (E.D. Mich. Oct. 7, 2016). JCMS filed a notice of appeal (Dkt. 185), but the Federal Circuit later dismissed the appeal based on an agreement between the parties. 1/27/2017 Order (Dkt. 202).

Currently pending before the Court are FCA's motion for attorneys' fees (Dkts. 191, 193), which has been fully briefed, and JCMS's motion for leave to file a sur-reply (Dkt. 199), which FCA opposes (Dkts. 200, 201). JCMS has also submitted a notice of supplemental authority in support of its opposition to the FCA's motion for attorneys' fees (Dkt. 204), to which FCA filed a response (Dkt. 205).

### C. Reexamination and <u>Inter Partes</u> Review Proceedings

In June 2014, Volkswagen Group of America, Inc. filed ex parte reexamination proceedings at the United States Patent and Trademark Office ("USPTO"), challenging the validity of one claim from each of the asserted patents in this case. <u>Joao Control</u>, 193 F. Supp. 3d at 802. The USPTO only upheld the validity of Claim 21 of the '363 Patent. <u>Id.</u> The USPTO Patent Examiner found the other claims challenged in the reexamination proceedings (Claim 1 of the '405, Claim 48 of the '130 Patent, and Claim 3 of the '076 Patent) to be invalid. <u>Id.</u> At the time of the Court's summary judgment decision, JCMS had appealed the adverse decisions of the USPTO Patent Examiner. <u>Id.</u> Volkswagen did not rely upon the primary prior art reference at issue in the motion for summary judgment, specifically the published European patent application 92400712.3 to inventor Didier Frossard, entitled "System for controlled shutdown and for location of a movable or mobile equipment." <u>Id.</u> at 802-803.

In response to JCMS asserting its patents, accused infringers filed numerous inter partes review proceedings at the USPTO challenging the validity of various claims in the '405, '130, '076, and '363 Patents.  Id. at 803.  Of particular note to this case, in the automotive field, Nissan North America, Inc. filed petitions to institute inter partes review proceedings to invalidate each of the asserted '405, '130, '076, and '363 Patents.  Id.  In January 2016, the USPTO decided to institute formal inter partes review proceedings against each of the '405, '130, 076, and '363 Patents, because Nissan had demonstrated that there was "a reasonable likelihood it would prevail in establishing the unpatentability" of the challenged claims in the patents.  Id. (quoting 35 U.S.C. § 314(a)).  In making its preliminary decision, the USPTO relied heavily on Frossard. Id.  At the time the Court issued its summary judgment decision, a trial had not yet taken place in the Nissan inter partes review proceedings.  Id.

## II.  STANDARD OF DECISION

The Patent Act of 1952 provides: "The court in exceptional cases may award reasonable attorneys to the prevailing party."  35 U.S.C. § 285.  In 2014, the Supreme Court changed the law on what constitutes an exceptional case in order to award attorneys' fees:

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014).  The Supreme Court noted that, when Congress used the word "exceptional" in § 285, "'exceptional' meant 'uncommon,' 'rare,' or 'not ordinary.'"  Id.

In Octane Fitness, the Supreme Court also changed the burden of proof for establishing whether a case is exceptional. Before Octane Fitness, the party seeking attorneys' fees had to prove that the case was "exceptional" by clear and convincing evidence. Id. at 1754, 1758. After Octane Fitness, the party seeking an award of attorneys' fees must show that the case is exceptional by a preponderance of the evidence, "a change in the law lowering considerably the standard for awarding fees [under § 285]. . . ." Bayer Cropscience AG v. Dow Agrosciences LLC, 851 F.3d 1302, 1305 (Fed. Cir. 2017).

Under the Supreme Court's new standard for "exceptional," the district court, considering the totality of the circumstances, must decide whether the case "stands out" from other cases, for example, with respect to its lack of substantive strength on the merits or the unreasonable manner in which the case was litigated. "The Supreme Court rejected . . . a rigid approach in Octane Fitness, holding that whether a party's merits position was objectively reasonable is not dispositive under § 285. . . . Instead, the Supreme Court adopted a holistic and equitable approach in which a district court may base its discretionary decision on other factors, including the litigant's unreasonableness in litigating the case, subjective bad faith, frivolousness, motivation, and 'the need in particular circumstances to advance considerations of compensation and deterrence." Bayer Cropscience, 851 F.3d at 1306. This liberalized earlier interpretations of § 285.[1]

In Highmark Inc. v. Allcare Health Management System, Inc., 134 S. Ct. 1744 (2014), a case decided on the same day as Octane Fitness, the Supreme Court emphasized that the

---

[1] In Octane Fitness, the Supreme Court overruled the narrower view of § 285 that many courts had adopted, as reflected in Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005) ("[A] case may be deemed exceptional" under § 285 only in two limited circumstances: "when there has been some material inappropriate conduct," or when the litigation is both "brought in subjective bad faith" and is "objectively baseless.").

determination of whether to award attorneys' fees is within the sound discretion of the district court. The Supreme Court held "that an appellate court should review all aspects of a district court's § 285 determination for abuse of discretion." Id. at 1747. The Supreme Court explained:

> "[A]s a matter of the sound administration of justice," the district court "is better positioned" to decide whether a case is exceptional, because it lives with the case over a prolonged period of time. . . . [T]he question is "multifarious and novel," not susceptible to "useful generalization" of the sort that de novo review provides, and "likely to provide from the experience that an abuse-of-discretion rule will permit to develop."

Id. at 1748-1749. "Abuse of discretion is a highly deferential standard of review." Bayer Cropscience, 851 F.3d at 1306.

## III. DISCUSSION

The issue before the Court is whether, considering the totality of the circumstances, this case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, 134 S. Ct. at 1756.

FCA argues that this case is "exceptional" under § 285 because (i) after the claim construction hearing, JCMS should have known that the asserted patents were invalid as being anticipated and/or obviousness in light of prior art, particularly Frossard; and (ii) that the manner in which JCMS litigated this case was unreasonable.

After considering the facts and the history of this case, the Court finds that this case is not "exceptional" under the totality of the circumstances. More specifically, the Court finds that JCMS's lawsuit against FCA was not "frivolous" or "objectively unreasonable" with respect to the substantive strength of its litigating position. Nor does the Court find JCMS litigated this case in an unreasonable manner.

### A. Whether JCMS Should Have Known that the Asserted Patents Were Invalid as Anticipated or Obviousness

FCA argues that, after the Court's claim construction decision, JCMS should have known that the asserted patents were invalid as being anticipated and/or obvious in light of prior art, particularly Frossard. To properly address the parties' arguments on this issue, the Court provides a brief history of this case.

During the discovery phase of this case, FCA disclosed prior art to JCMS, including the Frossard European patent publication, and argued that the asserted patents were invalid in light of the prior art. Frossard was published in French, but qualifies as prior art. Similar to the asserted patents, Frossard teaches a system to remotely shut down and locate a vehicle if it is stolen. Specifically, Frossard teaches a three-device communication system: (A) a person using a computer or a telephone communicates with (B) an intermediate computer server, which then sends a signal to (C) a control device on the remote vehicle to have the vehicle perform a function, such as to shut down the vehicle if it is stolen.

During the claim construction phase of the case, faced with very similar prior art, JCMS argued that the language of the asserted claims should be construed narrowly. For example, JCMS argued that the claim terms "first signal," "second signal," and "third signal" should be interpreted to mean that "different signals with content that is not identical to the content of the other signals." Joao Control, 2015 WL 5063260, at *11. As part of that argument, the Plaintiff argued that that the claims should, therefore, be construed to not include "relay" devices, which the Court understood to merely regenerate and forward the same electronic signal. Id.

At the time of construing the disputed claim terms, the Court did not understand the particular invalidity and infringement arguments, as those arguments were not before the Court. Presumably, the parties did not want the Court to prejudge the infringement and invalidity

arguments that would be addressed at summary judgment. However, the Court noted: "It appears that Plaintiff is requesting the Court redraft the claim language or otherwise define the claim language so as to preserve the validity of the claims or otherwise defeat an invalidity argument that Plaintiff anticipates that Defendant will make in the future. The parties have alluded to such at oral argument." Id. at *12.

Given the easily understandable claim terms that the parties requested to be construed (e.g., "first signal," "second signal," and "third signal"), the Court concluded that it would not "rewrite claim terms which are otherwise clear to preserve the validity of the claims or defeat anticipated invalidity arguments." Id. The Court did state, however, that it "reserves the right to modify its claim constructions as the infringement and invalidity issues of the asserted patents become clearer." Id. at *16. The Court specifically cited Lava Trading. Inc. v. Sonic Trading Management, LLC, 445 F.3d 1348, 1350 (Fed. Cir. 2006), which held that without the "vital knowledge of the accused products [or prior art]," a court's claim construction decision "takes on the attributes of something akin to an advisory opinion."

After completing fact and expert discovery, and the parties filed cross motions for summary judgment. The Court granted FCA's motion for summary judgment as to the invalidity of all nineteen asserted claims, holding that all the asserted claims were anticipated and/or obvious in light of Frossard. In its opinion, the Court found that "[t]he asserted patents and Frossard have essentially the same overall structure of an A to B to C communication system: a remote user using, for example, his home computer sends a signal to an intermediate server computer which in turn sends a signal to the control device at the vehicle to shut down the vehicle if it is stolen." Joao Control, 193 F. Supp. 3d at 809.

JCMS's primary argument why Frossard did not anticipate or render the asserted claims obvious is that, while Frossard discloses a three-device communication system, Frossard does not disclose a three "control" device communication as set forth in the claim.  Id.  More specifically, JCMS argued that the "receiver/decoder circuit" in the vehicle as described by Frossard, which receives signals from the remote intermediate computer server and sends instructions to systems in the vehicle, was not a "control" device because it was simply responding or passing along a signal like a "simple relay."  Id. at 810.  Instead of the focus being on the "first signal," "second signal," and "third signal" claim limitations, as it seemed to the Court at the claim construction hearing, the issue at the summary judgment phase of the case was whether Frossard disclosed a third-control device at the vehicle.

In deciding the summary judgment motion, the Court looked closely at the Frossard prior art document and found that there was no genuine issue of material fact that Frossard discloses a third control device at the vehicle.  Id.  More specifically, the Court found that the "receiver/decoder circuit" disclosed in Frossard was a control device, because it clearly satisfied the Court's previous construction for a control device.  Id.; see also Joao Control, 2015 WL 5063260, at *4 (construing "control device" as "a device that directs the activity of another device").

In opposing FCA's summary judgment as to invalidity, JCMS also took the position that certain claims were not invalid as being obvious, because they contained an additional claim limitation requiring that the user's computer communicate to the intermediate computer server over the Internet.  Joao Control, 193 F. Supp. 3d at 812.  Having been filed in 1992, Frossard did not disclose the use of the "Internet".  Id. at 812-813.  Instead, Frossard disclosed using a computer on a "Minitel" computer network to send a signal from the user's computer to the

intermediate computer server.  Id. at 813.  Developed and used in Europe, the Minitel computer network was essentially a predecessor to the Internet.  Id.

FCA argued that it would have been obvious to a person of ordinary skill in the art at the time of filing the asserted patents in 1996 to substitute the use of the Internet for the Minitel computer network, and cited cases where courts found that substituting the Internet in an otherwise known computer system would have been obvious.  See, e.g., Soverain Software LLC v. Newegg Inc., 705 F.3d 1333, 1340 (Fed. Cir. 2013).

The Court agreed with FCA, finding that "it would have been obvious to a person of ordinary skill in the art to modify the system taught in Frossard to use the more modern . . . computer communication network of the Internet."  Joao Control, 193 F. Supp. 3d at 813. The Court reasoned that it would have been "common sense" for a person of ordinary skill in the art at the time of the invention of the asserted patents in 1996 to substitute the Internet for the Minitel computer network.  Id.

In the present motion for attorneys' fees, FCA argues that JCMS's "continued litigation after losing a dispositive claim construction issue warrants an exceptional case filing."  Def. Mot. at 8.  FCA seeks reimbursement of its attorneys' fees from the date of the Court's claim construction opinion to the present.  FCA argues that, after the Court's claim construction decision, in which the Court stated that it would not rewrite the claims to preserve their validity, JCMS's "relay" argument was fully resolved and settled law of the case.  Id. at 6.  At that point, FCA argues that JCMS should have dismissed its case, but, instead, JCMS ignored the Court's ruling and moved forward with fact and expert discovery, briefed cross motions for summary judgment, and briefed a significant number of motions in limine.  Id. at 7.  FCA also argues that JCMS's position that certain claims were not obvious because Frossard did not disclose the use

of the Internet was objectively unreasonable or frivolous, thereby making this case "exceptional" within the meaning of § 285. <u>Id.</u> at 8-10.

Given the particular facts of this case, the Court finds that JCMS's positions after the Court's claim construction decision were not frivolous or objectively unreasonable. The Court first notes that patents duly issued by the USPTO are presumed valid by statute, and that a party challenging the validity of a patent must prove the patent's invalidity by clear and convincing evidence. 35 U.S.C. § 282; <u>Microsoft Corp. v. i4i Ltd. P'ship</u>, 564 U.S. 91, 95 (2011). Given this relatively high burden on a party to prove a claim of a patent is invalid, it is understandable that a party will take an aggressive position that its patents are valid.

The Court disagrees with FCA's assertion that it was unreasonable for JCMS to continue with its arguments after the Court's claim construction ruling because the JCMS's "relay" argument was fully resolved and settled law of the case. In its claim construction ruling, the Court made clear that it did not fully resolve the parties' claim construction arguments, in the context of the infringement and invalidity arguments that the Court would ultimately have to decide, because the parties did not brief the Court on those arguments. <u>See</u> <u>Joao Control</u>, 2015 WL 5063260, at *6 n.1. The Court stated that "Plaintiff did not extensively explain relay devices and how they operate." <u>Id.</u> at *11. The Court expressly "reserve[d] the right to modify its claim constructions as the infringement and invalidity issues of the asserted patents become clearer." <u>Id.</u> at *16. Given these facts, the Court disagrees with FCA that JCMS's "relay" argument was fully resolved and settled law of the case.

The Court more squarely addressed the parties' claim construction arguments at the summary judgment phase of the case and how the different claim terms related to the JCMS's validity argument. In its claim construction ruling, the Court only considered JCMS's "relay"

arguments in the context of the proper construction for the claim terms "first signal," "second signal," and "third signal." Id. at *11-12.

Moreover, the Court finds that JCMS's "relay" arguments at the summary judgment phase of the case were not frivolous or objectively unreasonable. The primary issue in the summary judgment motion was whether the receiver/decoder circuit taught in Frossard was a "control device," as set forth in the asserted claims, or whether Frossard only taught using a relay device at the vehicle. Joao Control, 193 F. Supp. 3d at 809-811. In opposing summary judgment, JCMS argued that the receiver/decoder circuit was a relay device, not a control device. Id. at 809. In other words, at summary judgment, JCMS did not challenge the Court's claim construction of "third signal," which the Court addressed in its claim construction ruling, but rather argued that Frossard did not teach having a "control device" at the vehicle.

Although the Court held in its summary judgment opinion that a reasonable jury could only find that receiver/decoder device was a control device, the Court finds that JCMS's continued litigation of this case after the Court claim construction ruling was not frivolous for two primary reasons. First, as discussed above, the Court reserved the right to readdress its claim constructions at oral argument as the infringement and invalidity issues became clearer. It was very possible that the Court would modify one of its previous claim constructions after fully understanding the parties' invalidity arguments in the context of the prior art at issue. In fact, the Court did have a better appreciation for JCMS's claim construction arguments after having an understanding of the prior art and the invalidity arguments being made. Second, the Court finds that JCMS's primary validity argument at summary judgment (i.e., that the receiver/decoder in the Frossard reference was not a control device) does not rise to the level of being frivolous or objectively unreasonable, so as to stand out from other patent infringement cases.

The case law cited by FCA is distinguishable from the present case. None of those cases dealt with a factual situation where the court expressly reserved the right to readdress its claim construction rulings when the court could more fully address the invalidity arguments and prior art references, especially when considering the requirement to prove invalidity by clear and convincing evidence. Rather, the cases cited by FCA generally stand for the proposition that a party crosses the line between an ordinary case and exceptional case if it ignores a settled adverse ruling. See, e.g., Phonometrics, Inc. v. Westin Hotel Co., 350 F.3d 1242, 1246 (Fed. Cir. 2003) (affirming an award of attorneys' fees where plaintiff continued to press its infringement claim knowing that it could not establish infringement under a firmly established claim construction); Sorkin v. Universal Bldg. Prods., Inc., No. 1:08-cv-133, 2010 WL 519742, at *3-4 (E.D. Tex. Feb. 9, 2010) (finding an exceptional case where the court's claim construction made it clear that plaintiff's position was "not even remotely supported by the claim language and the court's claim construction order"); Thomas & Betts Power Sols., LLC v. Power Distrib., Inc., No. 3:07CV167, 2008 WL 373639, *2 (E.D. Va. Feb. 8, 2008) (awarding attorneys' fees where plaintiff "continued to pursue an infringement claim in this Court instead of seeking a final order so that it could appeal this Court's claim construction," even though "the claims had no chance of success").

Regarding JCMS's position that certain claims were non-obvious because they specified using the Internet, the Court does not find that argument frivolous or objectively unreasonable. FCA correctly points out that, at the time JCMS made this validity argument, cases had held that substituting the Internet in an otherwise known computer system was obvious. JCMS's validity position was weak. However, the Court agrees with JCMS that every case must be decided on its own facts. Given the facts of this case, the Court finds that this argument does not rise to the

level of being frivolous or objectively unreasonable, so as to make this case stand out from other zealously litigated patent infringement cases. The reasonableness of JCMS's argument must be considered in light of the high burden of proof of clear and convincing evidence to prove a patent invalid.

Other cases have held that the granting of summary judgment does not mean the arguments were so frivolous or objectively unreasonable to render the case exceptional within the meaning of § 285. For example, in <u>SFP Works LLC v. Buffalo Armory, LLC</u>, No. 14-cv-13575, slip op. at 3 (E.D. Mich. Apr. 17, 2017), although the court granted summary judgment of no infringement, the court found that the defendant had not met "the high standard required to establish entitlement to an award of attorneys' fees." <u>See also</u> <u>Printeron, Inc. v. BreezyPrint Corp.</u>, No. H-13-3025, 2015 WL 7149442, at *3-5 (S.D. Tex. Nov. 10, 2015) (denying a motion for attorneys' fees even though defendant pointed to "various unsuccessful legal and factual positions" taken by the plaintiff, because the plaintiff's claims were not so exceptionally meritless that they "'descend to the level of frivolous argument or objective unreasonableness'") (quoting <u>Gametek LLC v. Zynga, Inc.</u>, No. CV 13-2546, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014)).

FCA points to a couple of "other factors" that make JCMS's substantive positions stand out as frivolous or objectively unreasonable. First, FCA points to the fact that Raymond Joao — the inventor of the asserted patents and owner of JCMS — is a patent attorney. Def. Mot. at 10-11. As a patent attorney, FCA argues that Joao should have known the asserted claims were invalid. Because the Court has already found that the JCMS's arguments were not frivolous or objectively unreasonable, the fact that Joao is a patent attorney is irrelevant. FCA also points to the fact that there were adverse rulings by other courts on at least one of asserted patents, or

other related patents, that should have put JCMS on notice of the substantive weakness of its case.  See Joao Control & Monitoring Sys., LLC v. Telular Corp., 173 F Supp. 3d 717 (N.D. Ill. 2016); (invalidating all of the claims of the '363 Patent and related U.S. Patent No. 6,587,046 for failing to satisfy 35 U.S.C. § 101); Joao Control & Monitoring Systems, LLC v. Digital Playground, Inc., No. 12-cv-6781, 2016 WL 5793745 (S.D.N.Y. Sept. 30, 2016) (invalidating all of the claims of the 6,587,046 and 7,277,010 patents for failing to satisfy § 101).  Both of the above cases were decided shortly after or shortly before this Court issued its summary judgment decision on June 10, 2016.  Moreover, the cited cases dealt with different legal issues than addressed by this Court.  Accordingly, the decisions in those cases did not provide sufficient notice to JCMS during the litigation of this case, such that JCMS's positions were substantively frivolous or objectively unreasonable.  Likewise, although the USPTO had instituted inter partes review proceedings on the disputed patents, those proceedings were still pending at the time the Court entered decided FCA's summary motion.

In considering the totality of the circumstances, the Court finds that the substantive strength of JCMS arguments and positions in this case was not so frivolous or objectively unreasonable to stand out from other zealously litigated patent infringement cases, so as to be deemed exceptional under § 285.    The Federal Circuit has held that the legislative purpose behind § 285 is to prevent a party from suffering a "gross injustice."  Checkpoint Sys., Inc. v. All-Tag Sec. S.A., 858 F.3d 1371, 1376 (Fed. Cir. 2017).  The Court does not find that it would be "grossly unjust" in this case "that the winner of the particular law suit be left to bear the burden of his own counsel fees."  Id.

**B.  Whether Plaintiff Litigated This Case in an Unreasonable Manner**

FCA also argues that this case stands out from other patent infringement cases because JCMS litigated this case in an unreasonable manner. FCA provides several arguments to show how this case was litigated in an unreasonable manner. The Court addresses each in turn.

First, FCA argues that JCMS unreasonably litigated this case because JCMS refused to agree to a narrow list of "representative claims" to be considered at summary judgment and trial, as requested by the Court. In its response brief, JCMS correctly notes that it offered to narrow the nineteen asserted claims to a representative twelve claims. 4/20/2016 Email, Ex. D to Pl. Resp. (Dkt. 195-7). Given the differences in the claims being asserted, and the many difficult infringement and invalidity issues, the Court finds that JCMS's position was reasonable. At no time was JCMS unwilling to work with the Court in trying to reduce the number of disputed claims to a representative sample. Accordingly, this argument does not weigh in favor of finding this case exceptional.

Second, FCA argues that JCMS unreasonably withheld its infringement theories from FCA until expert discovery. For example, FCA states that JCMS's corporate representative refused to answer any questions regarding JCMS's infringement theories during the Rule 30(b)(6) deposition of JCMS. In addition, after the filing of summary judgment motions, FCA notes that it was forced to file a motion for sanctions to prohibit JCMS from relying on the late-disclosed evidence and infringement theories. More specifically, in its motion for sanctions, FCA argued that JCMS did not identify all the third parties involved in allegedly practicing the patented invention (e.g., FCA suppliers Sprint and Airbiquity) and did not disclose how FCA directed or controlled those third parties' allegedly infringing activities under a theory of direct infringement. Def. Mot. for Sanctions at 7-8 (Dkt. 70). In its response to FCA's sanctions motion, JCMS argued that it did not withhold infringement theories and evidence, and that any

new evidence relied upon was due to FCA providing such evidence shortly before final infringement contentions were due. Pl. Resp. to Def. Mot. for Sanctions at 7 (Dkt. 92). FCA's motion for sanctions became moot once the Court granted FCA's motion for summary judgment as to invalidity and dismissed the case with prejudice. As such, the Court never decided FCA's motion for sanctions.

As to FCA's assertion that it was improper for a fact witness under Rule 30(b)(6) to refuse to answer questions on JCMS's legal theories, the Court agrees with JCMS that questions as to legal theories and contentions should generally not be directed to a fact witness. Such questions are more properly asked in contention interrogatories, requests for clarification to a party's infringement or validity contentions, or in expert depositions.

As to FCA's argument that JCMS did not timely disclose its direct infringement theory and supporting evidence, the Court finds that JCMS did clearly state that it was alleging a theory of direct infringement. For example, in its final infringement contentions, dated October 5, 2015, JCMS alleged a theory of direct infringement. Id. at 7. JCMS's claim charts that were part of its final infringement contentions further disclose that FCA suppliers Sprint and Airbiquity provided the communication system for the accused system. Id. at 8. Only a month later, on November 11, 2015, JCMS disclosed its theories and evidence in more detail in the expert report of Frank Koperda. Moreover, JCMS states that it only learned of the third parties involved in the accused system when it took the 30(b)(6) deposition of FCA on June 30 and July 1, 2015. Id. at 9. JCMS also states that FCA did not produce the final versions of the supplier agreements that it relied upon to prove FCA's alleged "direction or control" over its third party suppliers until September 25, 2015, shortly before the October 5, 2015 deadline for final infringement contentions. Id. at 8-9. Based on these facts, the Court finds that the JCMS did not engage in an

unreasonable manner of litigation by failing to timely disclose its infringement theories and evidence.

Third, FCA argues that JCMS took an unreasonable damages position. According to FCA, JCMS initially improperly inflated the damages it was seeking by a factor of nearly twenty by offering expert testimony that failed to apportion the damages to the allegedly infringing features of the service or product offered for sale, contrary to Federal Circuit case law. E.g. VirnetX, Inc. v. Cisco Sys., Inc., 767 F.3d 1308, 1327 (Fed. Cir. 2014). FCA filed a motion to strike JCMS's expert witness's testimony (Dkts. 129 (redacted) and 134 (sealed)). FCA states that, on the date that its opposition to the motion to strike was due, JCMS supplemented its expert report to apply the correct law and apportion the damages to the alleged infringement. Def. Mot. for Att'ys Fees at 14. FCA argues that this was improper because expert discovery had already closed. The Court finds JCMS's abandonment of an unsupportable litigation position after a party considers the opposing party's case law and arguments to be commendable. Of course, it would have been better if JCMS had never asserted an unsupportable damages position. The Court finds that this argument by FCA does not weigh heavily in favor of finding this case to be exceptional.

Fourth, FCA argues that JCMS misstated the law and facts at various points in the case. FCA points to a couple of noteworthy examples: (i) JCMS misstated the law that there is a heightened burden to establish that a patent claim is invalid when the particular prior art reference being relied upon was previously considered by the USPTO and (ii) JCMS changed its proposed claim construction for the claim term "authorized and allowed" for the '363 Patent after summary judgment. In its response brief, JCMS states that it did not misstate the law on there being a higher burden on a party challenging the validity of a patent when the USPTO had

already considered the particular prior art references.   See Pl. Resp. at 19-20 (citing

Securitypoint Holdings, Inc. v. United States, No. 11-268C, 129 Fed. Cl. 25, 35 n.7 (Fed. Cl. Oct.

28, 2016)).   As to FCA's argument that JCMS changed its construction of the claim term

"authorized and allowed" after summary judgment, JCMS states that it "is unable to decipher the

basis for FCA's inflammatory allegation."  Pl. Resp. at 20.

As to the issue of whether there is a heightened burden to prove to a patent claim invalid

when the prior art being relief upon was considered by the USPTO, the Supreme Court addressed

that issue in i4i Ltd. P'ship, 564 U.S. at 110-111.  The Supreme Court held that burden of proof

is always clear and convincing evidence.  However, the Supreme Court held, where the prior art

was not previously considered by the USPTO, it will be easier for the challenger to meet the

clear and convincing evidence burden of proof.  Id. at 111.  The Supreme Court held that a jury

may be instructed to evaluate whether the evidence before it was previously considered by the

USPTO, and if not, to consider that fact when determining whether invalidity has been proven by

clear and convincing evidence.  Id.  Having considered the law on this issue, the Court finds that,

in stating that there is a heightened burden if a challenger relies on prior art that was already

considered by the USPTO, JCMS simply meant that the hurdle to prove a patent claim invalid is,

as a practical matter, more difficult when the prior art reference was previously considered by the

USPTO.  Accordingly, the Court finds that this argument does not weigh heavily in favor of

finding this case to be exceptional.

As to FCA's argument that JCMS took inconsistent positions as to the proper

construction of the claim language "determines whether an action . . . is an authorized or an

allowed action" in the '363 Patent, the Court agrees with FCA that JCMS did in fact take

inconsistent positions as to this claim limitation.  This claim language relates to the idea that the

vehicle's owner or other user using a personal computer may control a vehicle system by sending a signal containing an instruction for the vehicle to an intermediate web site or computer server. The written description of the '363 Patent states that the signal sent by the user may contain two type of codes: (i) an access code and (ii) a command code. 10/07/2016 Op. & Order at 7-8 (Dkt. 189). The access code is in effect a type of passcode, while the command code is an instruction to control a vehicle system, such as to turn off the ignition system to disable the vehicle. Id.

In support of its summary judgment motion for infringement, JCMS agreed with the Court that the "authorized or allowed" language meant that either the intermediate web site determined whether the user was authorized by confirming a password or determined whether the specific command entered by the user was allowed by the vehicle. Pl. Reply Br.to Mot. for Summ. J. at 2-3 (Dkt. 87). In other words, in seeking summary judgment of infringement, JCMS agreed with the Court that claim language was disjunctive in using the word "or." Id. However, after the Court granted summary judgment of invalidity based on the Frossard prior art reference, JCMS changed its position and argued in a motion for reconsideration that this language should be interpreted to be "conjunctive." 10/07/2016 Op. & Order at 10 (Dkt. 189). In other words, JCMS argued that the correct construction of the claim language was that the intermediate web site must verify both an access code and command code. JCMS took its new position in an attempt to preserve the validity of the asserted claims in the patent by distinguishing asserted claims in the patent from the Frossard prior art reference.

After considering the above facts, the Court agrees with FCA should not have changed its proposed construction for the purpose of preserving validity of the asserted claims. However, the Court does not find JCMS's change in position alone sufficient to make this case exceptional.

After considering all the arguments made by FCA, and JCMS's complete litigation history of this case, the Court finds that JCMS did not engage in an unreasonable manner of litigation within the meaning of § 285, so as to make this case stand out from other patent infringement cases. Like almost all complex litigation cases, during the litigation of this case, there were disputes between the parties and motions were filed to resolve some of those disputes, including motions in limine. When properly presented, the Court was available to resolve those disputes. Taking JCMS's complete litigation history in this case, the Court finds that JCMS's manner of litigation did not rise to the level of being unreasonable or result in a gross injustice to FCA. Checkpoint, 858 F.3d at 1376. The Court does not find that JCMS litigated this case with a motivation to harass or burden FCA.

### C. Request for Attorneys' Fees and Costs Under 28 U.S.C. § 1927

FCA also requests that the Court award it attorneys' fees pursuant to 28 U.S.C. § 1927. FCA only devotes two paragraphs in its motion to this request.

Section 1927 provides that "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "Unlike sanctions imposed under a court's inherent authority, § 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence. Thus, an attorney is sanctionable when he intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings." Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater, 465 F.3d 642, 646 (6th Cir. 2006).

FCA's request under § 1927 mirrors FCA's arguments under § 285. FCA appears to use § 1927 as means to hold JCMS's trial counsel jointly and severally liable for JCMS's attorneys' fees.

For the same reasons discussed regarding § 285, the Court finds that JCMS did not unreasonably and vexatiously multiply the proceedings against FCA. JCMS's case was weak, and its counsel made some losing arguments. However, the Court does not find that this case rises to the level of sanctionable conduct under § 1927.

### D. Request for Attorneys' Fees Pursuant to the Court's Inherent Power

FCA further requests that the Court award it attorneys' fees pursuant to the Court's inherent authority. FCA's argument for attorneys' fees under the Court's inherent power was limited to the following: "Here, as described above, Joao's and its counsels' actions vexatiously and oppressively multiplied the proceedings, in bad faith, without regard to the language of the claims asserted, binding Federal Circuit precedent, or this Court's Markman ruling." Def. Mot. at 18.

A court can exercise its inherent powers to grant attorneys' fees and non-statutory costs "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Octane Fitness, 134 S. Ct. at 1758. The Court can also award sanctions under its inherent authority when a party willfully disobeys a court order, or for litigation abuses, even when other statutory provisions are inapplicable. Pickholtz v. Rainbow Techs., Inc., 284 F.3d 1365, 1137-1378 (Fed. Cir. 2002). "Because of their very potency, inherent powers must be exercised with restraint and discretion." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991).

For the same reasons discussed above regarding § 285, the Court does not find that an award of attorneys' fees or sanctions is appropriate under the Court's inherent authority.

Specifically, the Court does not find that JCMS litigated this case in bad faith, vexatiously, or for oppressive reasons. Nor does the Court find that JCMS willfully disobeyed a court order.

## IV. CONCLUSION

For the reasons stated above, the Court denies FCA's motion for attorneys' fees and non-statutory costs (Dkts. 191, 193). Because a sur-reply brief is not needed, the Court denies JCMS's motion for leave to file a sur-reply (Dkt. 199).

SO ORDERED.

Dated:  August 16, 2017                                  s/Mark A. Goldsmith
      Detroit, Michigan                              MARK A. GOLDSMITH
                                           United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 16, 2017.

                                           s/Karri Sandusky
                                          Case Manager